UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEITH ASHMEADE,

                                    Plaintiff,

          v.

AMAZON.COM, *a/k/a Amazon.com Services
LLC, a/k/a Amazon.com, Inc.*, *et al.*,

                                    Defendants.

---

No. 23-CV-4331 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Keith Ashmeade
Modena, NY
*Pro Se Plaintiff*

Eli Zev Freedberg, Esq.
Thelma Akpan, Esq.
Littler Mendelson, P.C.
New York, NY
*Counsel for Defendant Amazon.com Services LLC*

KENNETH M. KARAS, United States District Judge:

     Plaintiff Keith Ashmeade ("Plaintiff"), proceeding pro se, brings this Action against

Amazon.com Services LLC ("Amazon"), as well as Audrey Atwell, Joe McLaughlin, Janet

Simonelli, and Dan Willard-Concepcion (collectively, the "Individual Defendants," and, together

with Amazon, "Defendants"), alleging, among other things, that he was discriminated against on

the basis of his race and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621

et seq. (the "ADEA"), that Defendants violated the Occupational Safety and Health Act of 1970,

29 U.S.C. §§ 651 et seq. (the "OSH Act"), and that Defendants face liability pursuant to a variety

of causes of action under New York law, including negligence and intentional infliction of emotional distress.[1]  (*See generally* Second Amended Compl. ("SAC") (Dkt. No. 6).)[2]  Before the Court is Amazon's Motion To Dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt. No. 33).)  For the reasons that follow, the Court grants Defendants' Motion.

## I.  Background

### A.  Materials Considered

When he filed the SAC, Plaintiff included numerous exhibits to substantiate his claims. (*See, e.g.*, SAC 44 (providing a list of the exhibits Plaintiff attached to the SAC).)  In addition, Plaintiff added additional factual allegations in his Opposition to the instant Motion, and appended more exhibits to that document as well.  (*See generally* Pl's Opp'n to Mot. ("Pl's Opp'n") (Dkt. No. 36); *see also id.* at 24–137 (exhibits appended to Plaintiff's Opposition).) Thus, as a threshold matter, the Court must consider what documents and allegations it may consider in deciding the instant Motion.

---

[1] As the Court previously explained, (*see* Dkt. Nos. 25, 29), Plaintiff sues Amazon as "Amazon.com; A/K/A Amazon.com Services LLC[;] A/K/A Amazon.com Inc.[,]" (*see, e.g.*, SAC 4.)  Amazon asserts that "Plaintiff was employed by Amazon.com Services LLC and only that entity should be named as a Defendant in this Action."  (*See* Def's Mem. of Law in Supp. of Mot. ("Def's Mem.") 9 n.1 (Dkt. No. 34).)  For clarity, the Court refers to the corporate Defendant as "Amazon.com Services LLC"—shortened to "Amazon"—herein.

[2] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record.  And with respect to the SAC specifically, the Court will cite to the ECF-stamped page numbers in that pleading for clarity, given that Plaintiff did not consistently number the paragraphs therein.  (*See, e.g.*, SAC 4–6, 9–11.)

The Court also notes that the SAC is contained within the same document as a Motion for Leave to File the SAC, which Plaintiff filed on July 17, 2023.  (*See* SAC 1–2.)  The Court granted that application on November 9, 2023, (*see* Dkt. No. 29), and Plaintiff confirmed that he intended to prosecute the SAC, rather than other pleadings he had filed, on November 21, 2023, (*see* Dkt. No. 30).

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves" because "[t]o go beyond the allegations in the [c]omplaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Federal Rule of Civil Procedure] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation marks omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" (alteration adopted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

However, when reviewing a complaint submitted by a pro se plaintiff, the Court may also consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "[the plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997), "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion

conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2

(E.D.N.Y. Sept. 19, 2013), and "documents either in [the plaintiff's] possession or of which [the]

plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282

F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

Because Plaintiff is proceeding pro se, the Court will consider the exhibits attached to the

SAC.  *Akinlawon v. Polonco*, No. 21-CV-2621, 2023 WL 6216724, at *2 (S.D.N.Y. Sept. 25,

2023) (considering exhibits attached to a pro se complaint when deciding a motion to dismiss);

*see also Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 561 (S.D.N.Y. 2023)

(considering three exhibits that were attached to a complaint in connection with deciding a

motion to dismiss).  For that same reason, the Court will also consider both the factual assertions

raised for the first time in his Opposition and the exhibits attached thereto.  *See Gadson*, 1997

WL 714878, at *1 n.2; *accord Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district

court deciding a motion to dismiss may consider factual allegations made by a pro se party in his

papers opposing the motion." (italics omitted)); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022

WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to an opposition brief

given the plaintiff's pro se status).[3]

B.  Factual Background

Unless otherwise stated, the following facts are drawn from the SAC, Plaintiff's

Opposition, and the exhibits attached to those documents.  The facts alleged are assumed true for

the purpose of resolving the instant Motions.  *See Div. 1181 Amalgamated Transit Union-N.Y.

Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

---

[3] In light of the foregoing analysis, the Court rejects Amazon's assertions that the factual
assertions in Plaintiff's Opposition and the exhibits attached to that filing and the SAC should be
disregarded.  (*See* Def's Mem. 15–16; Def's Reply Mem. of Law in Supp. of Mot. ("Def's
Reply") 5 (Dkt. No. 37).)

However, given that the SAC contains numerous legal conclusions, (*see, e.g.*, SAC 7

("[P]laintiff, during his tenure at Defendant Amazon, was subjected to a series of discriminatory,

retaliatory, and abusive actions which cultivated a fundamentally hostile work environment.");

*see also id.* at 12 (asserting that Amazon's "actions were motivated by discriminatory intent" and

thus violated Title VII); *see also id.* at 14 (similar)), the Court emphasizes at the outset that it

need not—and will not—accept such conclusions as true, *Cadet v. All. Nursing Staffing of N.Y.,

Inc.*, 632 F. Supp. 3d 202, 219 (S.D.N.Y. 2022) ("Even in the pro se context, the Court is not

bound to accept 'conclusory allegations or legal conclusions masquerading as factual

conclusions.'" (italics omitted) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008))).

### 1.  The Parties

Plaintiff is an African American man and, during the time period relevant to this case, he

was approximately fifty years old.  (*See e.g.*, SAC 7, 9; *see also* Pl's Opp'n 31 (Plaintiff's

statement that he identifies as an "African American [m]ale" and that he was fifty years old as of

August 9, 2023).)  Amazon is a company engaged in online retail services.  (SAC 4.)

From approximately January 2021 to May 9, 2023, Plaintiff was employed by Amazon as

an "L5 Operations Manager II" at its SWF1 Fulfillment Center ("SWF1") in Rock Tavern, NY.

(*Id.*; *see also* Pl's Opp'n 31.)  It appears that the Individual Defendants were Amazon employees

during the relevant time period as well.  (*See* SAC 4.)  Specifically, Atwell was an "Operations

Manager" and Plaintiff's direct supervisor; McLaughlin was a "Senior Operations Manager";

Simonelli was a Human Resources ("HR") Manager; and Willard-Concepcion was a "General

Manager."  (*Id.* at 4, 7.)

## 2.  Plaintiff's Allegations of Discrimination & Workplace Safety Issues[4]

Plaintiff alleges that, "during his first day" working under Atwell, he began facing "abusive treatment" about which he filed internal complaints right away.  (*Id.* at 7.)  His internal complaints "identified instances of intentional badgering and emotional distress inflicted upon [him]."  (*Id.*)

Defendants allegedly responded to Plaintiff's complaints in a variety of unproductive ways.  (*See, e.g.*, *id.*)[5]  For example, Atwell is alleged to have "weaponized a management tool known as a Thrive document[,]" which is "[t]ypically used to review past performance and establish future improvement goals," but—in Plaintiff's case—was used as a form of retaliation. (*Id.* (footnote omitted).)  Specifically, rather than reviewing Plaintiff's performance during the preceding thirty days, Atwell reviewed Plaintiff's performance going back 280 days.  (*Id.* at 7, 9.)  Plaintiff alleges that Atwell's misuse of the Thrive procedure "prompted [him] to request an HR and Ethics investigation."  (*Id.* at 7.)

After he requested that investigation, Plaintiff avers that Atwell "escalated the hostile work environment" by "treating Plaintiff and another African American team lead in an unfair and demeaning manner."  (*Id.*)  In particular, Atwell allegedly "reduced the time and support given for task completion" provided to Plaintiff and the other team lead, which created "undue work pressure."  (*Id.*)  For instance, "Plaintiff and the other African American employee were

---

[4] Although Plaintiff's filings are far from a model of clarity with respect to the exact timeline of the misconduct he alleges, the Court has closely reviewed the Complaint, Opposition, and accompanying exhibits in order to present a cohesive narrative herein.

[5] The Court notes at this juncture that, at times, Plaintiff's allegations are rather imprecise when using the term "Defendant."  For example, Plaintiff raises a "Discrimination and Preferential Treatment" claim based on a "[D]efendant['s]" use of an internal management tool, but fails to make clear whether that Defendant is Amazon, Atwell, all Defendants, or someone else.  (*See* SAC 30.)  In such instances, the Court has done its best to ascertain which Defendant Plaintiff is referring to from the materials presented.

expected to deliver five times the typical work output in less than half the time allotted to their Caucasian counterparts working similar roles in different shifts." (*Id.* at 9.) Further, Plaintiff alleged in his Opposition that "Caucasian colleague's promotions, job performance, and job requirements were all inconsistent with the expectations of those given to the Plaintiff." (Pl's Opp'n 9.)

In the SAC, Plaintiff provides numerous additional examples of Atwell's alleged racial bias. (*See* SAC 9–11.) He asserts that, during a "closing meeting," Atwell "reassured [only] Caucasian lead employees that 'I have always liked you, if I did not like you, you would know[.]'" (*Id.* at 9.) She also allegedly "promoted Caucasian employees lacking knowledge of the[ir] department's roles or functions over several experienced African American or Hispanic team members[,]" such that those who were promoted needed to be trained by those who were passed over for promotion. (*Id.*) Additionally, Atwell allegedly took steps to "dismantle[] . . . Plaintiff's position as President of the Amazon SWF1 Black Employee Network." (*Id.* at 9–10.) As alleged, Atwell also "exhibited favoritism towards Caucasian team members who failed to complete tasks, follow protocols, or meet productivity standards, and covered for their insubordinate behaviors," while treating "African American employees in similar roles" in a more "punitive" manner. (*Id.* at 10.) Moreover, Atwell is alleged to have "formed separate chat groups with Caucasian lead employees and encouraged them to lodge complaints against the Plaintiff[.]" (*Id.* at 11.) Finally, with respect to Plaintiff specifically, Plaintiff alleges that Atwell forced him to arrive an extra hour early, even though she knew Plaintiff had young children who "could not be left home alone for extended period[s]." (*See id.* at 10; *see also id.* at 27

(suggesting that this scheduling modification was imposed upon Plaintiff "with the deliberate intent to create a false impression of performance concerns").)[6]

Apart from his allegations regarding racial discrimination, Plaintiff also asserts that he was mistreated on the basis of his age while working for Amazon. (*See id.* at 23.) Specifically, he alleges that Amazon, through Atwell, "has been systematically increasing workload and responsibility while simultaneously reducing resources and time for task completion, with the targeted group being" over the age of forty. (*Id.*) Plaintiff avers: "By increasing the workload and performance measurements of those aged [forty] and above, while reducing their resources and time, the defendant created a setting where these employees, including the plaintiff, are set up to underperform, thereby limiting their opportunities for advancement." (*Id.*) In his Opposition, Plaintiff explains that he was eventually replaced by a younger employee and that Amazon gives "preferential treatment . . . to younger employees under [thirty], including training and growth opportunities, leniency in their work, and public recognition, while older employees were subjected to a hostile work environment, restricted work stipulations, and eventual demotions[.]" (Pl's Opp'n 18.)

In terms of workplace safety issues, at Atwell's direction "manipulative devices were installed to block safety sensors on the conveyor." (SAC at 7 (footnote omitted); *see also id.* at

---

[6] Plaintiff also alleges that Atwell knowingly made certain misrepresentations in a Thrive document for Plaintiff, which cast him in an inaccurate light as an underperforming employee. (SAC at 10.) And he further avers that "Atwell made defamatory statements over radio broadcasts, attempting to tarnish [] Plaintiff's reputation and undermine his influence as the department's manager." (*Id.*) According to Plaintiff, Atwell assigned him an "unreasonable number" of work-related tasks—including "improperly []assigned . . . menial tasks," like "sweeping the dock and clearing jams"—as well. (*See id.* at 11, 21.)

24 (noting that Atwell had initially asked Plaintiff to install the manipulative devices).[7]  Plaintiff alleges that the installation of the manipulative devices was counter to the instructions in the manual for the conveyor system, (*see* Pl's Opp'n 12), and "led to a series of work injuries due to overburdened conveyors," (SAC 7).  Indeed, Plaintiff asserts that he injured at least one finger on his right hand while using the modified conveyor system.  (*See id.* at 13.)[8]  Thus, he filed complaints to various teams within Amazon, but the internal response was "worryingly passive," so Plaintiff also filed workplace safety complaints with the Equal Employment Opportunity Commission ("EEOC") and the Occupational Safety and Health Administration ("OSHA").  (*Id.* at 7.)  Some of those complaints contained allegations that certain Defendants impermissibly sped up conveyor speeds and allowed boxes to be stacked too high, and those reports are alleged to have led to an OSHA inspection at SWF1.  (*See* Pl's Opp'n 13.)[9]

Based on certain of Plaintiff's internal complaints, Amazon's "executive leadership" required SWF1 managers to receive psychological training.  (SAC 36.)  According to Plaintiff, however, one Defendant—it is unclear which one—exhibited "insincere effort and sarcastic

---

[7] Plaintiff asserts that Atwell instructed him to install these manipulative devices, which he also refers to as "reflectors," in order to "disable [] safety sensors, [thereby] permitting more items to go through and fill up the conveyor lines," purportedly in an effort to increase workers' productivity at the expense of their safety.  (SAC 7, 19.)

[8] This injury allegedly negatively affected Plaintiff's "secondary source of income and passion," that is, his role as a Director of Music in local churches.  (SAC 15.)
Notably, Plaintiff also alleges that "[s]everal employees were injured by the items moving through the conveyors" after the manipulative devices were installed.  (*Id.* at 20.)

[9] Plaintiff also alleges that one Defendant—presumably Amazon through its various employees—"consistently ignored . . . [P]laintiff's attempts to engage and resolve the issues at hand"; "repeated[ly] fail[ed] to reply or respond to . . . [P]laintiff's escalations"; and conducted "merely superficial" investigations into Plaintiff's complaints.  (SAC 34.)

demeanor during the training" and therefore "failed to adequately address the noted concerns." (*Id* at 36.)

In response to the installation of the manipulative devices, and notwithstanding the existence of "ongoing investigations," McLaughlin and Atwell designed a "PIVOT Plan" about twenty days later—pursuant to which Plaintiff was offered the choice to either separate from Amazon and receive a $14,315 severance, or to continue working at Amazon under heightened scrutiny based on his alleged underperformance—with the alleged ultimate goal of terminating his employment.  (*Id.* at 7, 20, 31; *see also id.* at 18 ("This PIVOT Plan disproportionately increased [Plaintiff's] workload while simultaneously decreasing the time given to complete said tasks.  [P]laintiff was threatened with termination if the unrealistic objectives outlined in the PIVOT Plan were not met, while no such expectations were placed on the Caucasian employees in similar positions during other shifts." (citation omitted)).)[10]  As a result, Plaintiff filed another complaint raising allegations of "retaliation and abuse of authority."  (*Id.* at 7.)  Again unsatisfied with Amazon's initial response, Plaintiff escalated his complaints to Amazon's "General Counsel, Senior VP of Ethics, and President of Global Fulfillment Centers."  (*Id.* at 7–8.)[11]

---

[10] In his Opposition, Plaintiff also alleges that an unspecified Defendant "identifie[d] the only African American Supervisor under Plaintiff's supervision and force[d] a PIVOT Plan stipulation to force quadruple the required workload in less than half the allotted time of all other Caucasian colleagues in the building, in the same role."  (Pl's Opp'n 19.)

[11] Plaintiff further alleges that the only other "African American manager[] within the Inbound Department" was also "targeted for termination through [a] PIVOT Plan."  (SAC 30.) This other manager is alleged to have been terminated pursuant to their PIVOT Plan as well. (*See id.* at 31 ("The PIVOT Plan tool was selectively used to terminate the only two African American managers within the Inbound Department [at SWF1]."))  It also bears noting that both Plaintiff and this other manager were "co-presidents of the Black Employee Network" affinity group at SWF1.  (*Id.*)

### 3.  Plaintiff's Termination

Following Plaintiff's most-recent complaints regarding the manipulative devices on the conveyors, it seemed like Amazon was attempting to address his concerns.  (*Id.* at 8.)  However, Plaintiff was again placed on a PIVOT Plan, which "reinstat[ed] . . . hostile conditions."  (*Id.*)  Ultimately, Plaintiff alleges that on or around May 9, 2023, his employment with Amazon was terminated by way of that PIVOT plan.  (*Id.* at 4, 8; *see also id.* at 20 (noting that a "[c]ommunication" between Simonelli and a "Career Ambassador" indicated that Plaintiff's termination should be classified as "Involuntary-Termination-PIVOT Plan").)

Beyond the injury to his right hand mentioned above, Plaintiff alleges that he had suffered "psychological distress caused by a hostile work environment," as well as "the degradation and humiliation of being reassigned to menial tasks," which, along with his "termination for voicing concerns and reporting injuries[,] present significant harm to [] [P]laintiff's mental health and overall well-being."  (*Id.* at 17.)

### C.  Procedural History

Plaintiff filed the SAC on July 17, 2023.  (*See* SAC.)  After Amazon was served on or around July 27, 2023, (*see* Dkt. No. 15), it filed a letter requesting leave to file the instant Motion on October 12, 2023, (*see* Letter from Eli Freedberg, Esq. to Court (Oct. 12, 2023) (Dkt. No. 24)).  Plaintiff filed responses on October 12, 2023, (*see* Letter from Keith Ashmeade to Court (Oct. 12, 2023) (Dkt. No. 26)), and October 26, 2023, (*see* Letter from Keith Ashmeade to Court (Oct. 26, 2023) (Dkt. No. 27)).  The Court set a briefing schedule the next day.  (*See* Memo Endorsement (Dkt. No. 28).)  On November 9, 2023, the Court adjusted that schedule. (*See* Order (Dkt. No. 29).)

Pursuant to that adjusted briefing schedule, Amazon filed its Motion on December 18, 2023.  (*See* Not. of Mot.; Def's Mem.; Decl. of Eli Freedberg, Esq. ("Freedberg Decl.") (Dkt.

No. 35).)  Plaintiff filed his Opposition on January 12, 2024.  (*See* Pl's Opp'n.)  On January 31,

2024, Amazon filed its Reply.  (*See* Def's Reply.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration

adopted) (internal quotation marks and citation omitted).  Instead, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration

adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). But when a plaintiff proceeds pro se, as noted, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules

of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)

(internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d

601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding

procedural rules and to comply with them." (italics omitted) (internal quotation marks and

citation omitted)).

    B.  Analysis

    The SAC raises fourteen claims arising under federal and state law.[12]  Those claims

include the following:

    I.    Race-Based Disparate Treatment Under Title VII, (*see* SAC 12–13);

    II.    Race-Based Disparate Impact Under Title VII, (*see id.* at 14–15);

    III.    Mixed Motive Retaliation Under Title VII, (*see id.* at 16–18);

    IV.    Race-Based Retaliation Under Title VII, (*see id.* at 18);

    V.    Whistleblower Retaliation Under the OSH Act, (*see id.* at 19–20);

    VI.    Abuse of Authority Under the OSH Act, (*see id.* at 21–22);

    VII.    Discrimination Under the ADEA, (*see id.* at 23–24);

    VIII.    Negligence and Endangerment, (*see id.* at 24–25);

    IX.    Nonfeasance Termination, (*see id.* at 25–26);

---

[12] The Parties appear to agree, with respect to Plaintiff's claims arising under state law, that New York law governs here.  "When a party assumes in its briefs that a particular jurisdiction's law applies, it gives implied consent sufficient to establish choice of law." *Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-CV-5966, 2018 WL 4360777, at *2 (S.D.N.Y. Aug. 15, 2018) (alteration adopted) (quotation marks omitted)); *see also Travelers Cas. Ins. Co. of Am. v. Blizzard Busters Snowplowing Corp.*, No. 21-CV-8220, 2023 WL 2648772, at *4 (S.D.N.Y. Mar. 27, 2023) (same).  Thus, the Court finds that New York law governs Plaintiff's state law claims.  *See Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir. 2000) ("The parties' briefs assume that New York law controls this dispute, and such 'implied consent . . . is sufficient to establish choice of law.'" (quoting *Tehran–Berkeley Civil & Env't Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989))).

X.    Malfeasance PIVOT Plan and Wrongful Dismissal Termination, (*see id.* at 26–27);

XI.    Biased Intentional Unjust Treatment Under the Family and Medical Leave Act ("FMLA"), the Fair Labor Standards Act ("FLSA"), the New York State Human Rights Law ("NYSHRL") and the New York Labor Law ("NYLL"), (*see id.* at 27–29);

XII.    Discrimination and Preferential Treatment in the Use of the PIVOT Plan Under Title VII and the FLSA, (*see id.* at 30–34);

XIII.    Malfeasance, Nonfeasance, and Misfeasance, (*see id.* at 34–35); and

XIV.    Intentional Infliction of Emotional Distress ("IIED"), (*see id.* at 35–40).

Amazon raises a flurry of arguments in support of its Motion. Among other things, Amazon asserts that Plaintiff: failed to exhaust his administrative remedies with respect to his Title VII and ADEA-based claims, (*see* Def's Mem. 17–18); failed to state any plausible claims for race or age discrimination, (*see id.* at 18–23, 25); failed to state any claim under the OSH Act because that statute does not provide a private right of action, (*see id.* at 23–24); cannot bring a negligence claim because such a claim is barred by Workers' Compensation exclusivity, (*see id.* at 25–26); raises a variety of claims that either do not exist under the law or that are duplicative of his other claims, (*see id.* at 26, 28–29); and failed to allege extreme and outrageous conduct in connection with his IIED claim, (*see id.* at 29–30). Amazon also contends that Plaintiff failed to effect service on the Individual Defendants. (*See id.* at 9 n.2; *see also* Def's Reply 12–13.) The Court will address each of Amazon's arguments to the extent necessary to resolve the instant Motion.

### 1. Service

Amazon argues that Plaintiff has yet to effect service on the Individual Defendants. (*See* Def's Mem. 9 n.2; *see also* Def's Reply 12–13.) The Court agrees.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Valid service is a prerequisite for a federal court to assert personal jurisdiction over a claim. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "Once a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." *Tomney v. Int'l Ctr. for the Disabled*, No. 02-CV-2461, 2003 WL 1990532, at *3 (S.D.N.Y. Apr. 29, 2003). In determining the sufficiency of service, the Court "must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service." *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005) (quotation marks omitted).

Under Federal Rule of Civil Procedure 4(e)—which concerns service on individuals living within a judicial district of the United States—Plaintiff could serve the Individual Defendants pursuant to state law, or by having a copy of the applicable summons and of the SAC delivered to the Individual Defendants personally, having a copy of each left at their dwellings or usual places of abode with someone of suitable age and discretion who resides there, or by having a copy of each delivered to an agent authorized by appointment or law to receive service of process. *See* Fed. R. Civ. P. 4(e)(1)–(2).[13]

---

[13] To be clear, Plaintiff could not have effected service in these ways by serving the summonses and SAC *himself*. *See* Fed. R. Civ. P. 4(c)(2) (providing that service can be effected by "[a]ny person who is at least 18 years old and *not a party*" (emphasis added)); *see also Gibson v. Mount Vernon Montefiore Hosp. Exec. Dir.*, No. 22-CV-4213, 2024 WL 1217528, at *6 (S.D.N.Y. Mar. 19, 2024) ("[P]arties are ineligible to serve their own process under Rule 4(c)(2)." (citation omitted)) (collecting cases).

Again, service pursuant to state law is permissible under Federal Rule of Civil Procedure 4(e)(1). Section 308 of the New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") governs personal service upon natural persons—such as Individual Defendants—and provides that service may be effected:

1. by delivering the summons within the state to the person to be served; or

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, . . . or

3. by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318 . . . ;

4. where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such affixing or mailing, whichever is effected later; service shall be complete ten days after such filing . . . ;

N.Y. C.P.L.R. § 308.[14]

Alternatively, New York law permits service by mail. Section 312-a of the CPLR provides in relevant part:

---

[14] The Court notes that New York law, like the Federal Rules of Civil Procedure, forbids plaintiffs from serving their own process. *See* N.Y. C.P.L.R. 2103(a) ("[P]apers may be served by any person *not a party* of the age of eighteen years or over." (emphasis added)).

> As an alternative to the methods of personal service . . ., a summons and complaint . . . may be served by the plaintiff or any other person by mailing to the person or entity to be served, by first class mail, postage prepaid, a copy of the summons and complaint . . . together with two copies of a statement of service by mail and acknowledgement of receipt in the form set forth in subdivision (d) of this section with a return envelope, postage prepaid, addressed to the sender.

*Id.* § 312-a(a).  Under this alternative mailing method, "[s]ervice is complete on the date the signed acknowledgement of receipt is mailed or delivered to the sender."  *Id.* § 312-a(b); *see also id.* §§ 312-a(d) (setting forth requirements for the format of the requisite statement of service by mail and acknowledgement of receipt of such service).

In his Opposition, Plaintiff does not argue that he followed any of the applicable service rules set forth above.  (*See* Pl's Opp' n 20.)  Instead, he contends that he properly served the Individual Defendants "by serving the [SAC] on all Defendants, including senior Amazon officials, at Amazon's business location and registered address in New York per Federal Rule of Civil Procedure 4(h)(1)(B)."  (*Id.*)  However, the provision Plaintiff relies upon concerns *corporate entities*, not individuals.  *See generally* Fed. R. Civ. P. 4(h).  Thus, the fact that the docket for this Action reflects that he attempted to effect service on the Individual Defendants through New York's Department of State makes clear that he has failed to properly serve those Defendants.  (*See* Dkt. Nos. 14, 16–18 (purported affidavits of service reflecting that Plaintiff attempted to serve the Individual Defendants via New York's Department of State).)

In general, plaintiffs must serve defendants within ninety days after their complaint is filed.  *See* Fed. R. Civ. P. 4(m).  Here, Plaintiff filed the SAC on July 17, 2023, (*see* SAC), so he should have served the Individual Defendants by no later than October 15, 2023.  Because he has failed to so, Plaintiff is hereby ordered to properly serve the Individual Defendants within thirty days of the date of this Opinion & Order.  If Plaintiff fails to do so, the Court may dismiss this Action without prejudice as against the Individual Defendants.  *See* Fed. R. Civ. P. 4(m) ("If a

defendant is not served within [ninety] days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").[15]

### 2. Administrative Exhaustion

Next, Amazon asserts that Plaintiff's Title VII and ADEA claims should be dismissed because he failed to exhaust applicable administrative remedies. (*See* Def's Mem. 17–18.)

"Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)); *see also Oparaji v. Tchrs.' Ret. Sys. of City of N.Y.*, No. 23-CV-5212, 2024 WL 3046120, at *5 (S.D.N.Y. June 18, 2024) ("Plaintiffs must first pursue available administrative remedies and file timely complaints with the EEOC '[a]s a precondition to filing [] Title VII [and ADEA] claim[s] in federal court.'" (alterations in original) (quoting *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018))). This requirement "applies to pro se and counseled plaintiffs alike." *Harris v. Off. of N.Y.S. Comptroller*, No. 20-CV-8827, 2022 WL 814289, at *3 (S.D.N.Y. Mar. 17, 2022) (italics omitted) (quoting *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015)).

---

[15] The Court is unconvinced by the cases Plaintiff relies upon to excuse his failure to comply with the Federal Rules of Civil Procedure as they relate to service of process. (Pl's Opp'n 20.) In *Robinson v. Turner*, a Seventh Circuit panel reversed a district court's dismissal of the plaintiff's complaint for failure to serve and remanded so the lower court could consider whether service was properly effected pursuant to state law. 15 F.3d at 84–86. That case decidedly does *not* state that service under Federal Rule of Civil Procedure 4(h) suffices when serving natural persons. *See id.* And the other case Plaintiff relies upon, *United Food & Com. Workers Union, Locs. 197, 373, 428, 588, 775, 839, 870, 1119, 1179 & 1532, by United Food & Com. Workers Int'l Union, AFL-CIO v. Alpha Beta Co.*, 736 F.2d 1371 (9th Cir. 1984), does not even contain the quote that Plaintiff attributes to it. Even if it did, however, the Court rejects the notion that requiring Plaintiff to follow the Federal Rules of Civil Procedure impermissibly "exalt[s] form over substance." (Pl's Opp'n 20 (citation omitted).)

The rationale for administrative exhaustion under the applicable statutory schemes "is to avoid unnecessary judicial action by the federal courts by '[giving] the administrative agency the opportunity to investigate, mediate, and take remedial action.'" *Sackett v. Dirlam*, No. 22-CV-6245, 2023 WL 4206520, at *4 (W.D.N.Y. June 26, 2023) (alteration in original) (quoting *Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985)). Thus, "[b]efore filing a complaint in federal court, plaintiffs asserting Title VII[] . . . and ADEA claims must first exhaust their administrative remedies by filing a complaint with the EEOC or the equivalent state agency," and, in New York, they must do so within 300 days of the allegedly discriminatory act. *Kaba v. Hope Home Care*, No. 23-CV-9512, 2024 WL 1679327, at *2 (E.D.N.Y. Apr. 18, 2024); *Doolittle v. Bloomberg L.P.*, No. 22-CV-9136, 2023 WL 7151718, at *4 (S.D.N.Y. Oct. 31, 2023) ("[T]o bring an ADEA claim, [a plaintiff] must first exhaust [his or] her administrative remedies by filing a charge with the EEOC within 300 days of the alleged unlawful practice." (quotation marks omitted)); *Baez v. Amazon.com Servs., LLC*, 659 F. Supp. 3d 339, 347 (E.D.N.Y. 2023) ("In New York, a federal employment discrimination claim [under Title VII] is time-barred unless the plaintiff first files an EEOC charge within 300 days of the alleged discrimination.")

In the Title VII context, in addition to filing a complaint with the EEOC, a plaintiff must also "receive a right-to-sue letter." *Davis v. Metro N. Commuter R.R.*, No. 21-CV-387, 2022 WL 2223018, at *8 (S.D.N.Y. June 21, 2022) (citing *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *see also Oparaji*, 2024 WL 3046120, at *5 (same); *Sackett*, 2023 WL 4206520, at *4 (same). Unlike Title VII, however, the ADEA "does not require an aggrieved party to receive a right-to-sue letter from the EEOC before filing suit in federal court." *Kaba*, 2024 WL 1679327, at *3 (quoting *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 563 (2d Cir. 2006)); *see also*

*Herrnson v. Hoffman*, No. 19-CV-7110, 2020 WL 6323637, at *1 n.2 (S.D.N.Y. Oct. 28, 2020) (same).

Notably, "[t]he Second Circuit has repeatedly held that 'the failure to exhaust administrative remedies is [only] a precondition to bringing a Title VII [or ADEA] claim in federal court, rather than a jurisdictional requirement' that, 'like a statute of limitations, is subject to [equitable defenses, such as waiver, estoppel, and equitable tolling].'" *Oparaji*, 2024 WL 3046120, at *5 (quoting *Hardaway*, 879 F.3d at 489, 491). Further, failure-to-exhaust arguments "are affirmative defenses, where defendants have the burden of proof to establish that plaintiffs failed to exhaust their required administrative remedies." *Id.* (citing, inter alia, *Hardaway*, 879 F.3d at 491). "[A] court should . . . grant a motion to dismiss pursuant to [Rule] 12(b)(6) for failure to exhaust if it is clear from the face of the complaint that a plaintiff has not exhausted their remedies." *Arnold v. Rsch. Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 287 (E.D.N.Y. 2016) (collecting cases).

The Court first considers whether Plaintiff exhausted his administrative remedies with regard to his Title VII claims, and concludes that he did not. The SAC does make—in a conclusory fashion—the following boilerplate assertion: "[Plaintiff has] exhaust[ed] administrative remedies under Title VII, ADEA, and relevant whistleblower protection laws, by filing timely charges with the appropriate federal agencies, namely the New York State Inspector General, the [EEOC], and [OSHA]." (*See* SAC 6.) However that, on its own and in view of the materials Plaintiff has submitted to the Court, is not enough to salvage Plaintiff's Title VII claims. *See Henriquez-Ford v. Council of Sch. Supervisors and Adm'rs*, No. 14-CV-2496, 2016 WL 93863, at *1 (S.D.N.Y. Jan. 7, 2016) (dismissing Title VII claims for failure to exhaust administrative remedies where the pro se plaintiff did not provide a right-to-sue letter and alleged

that she filed a complaint with the EEOC only in a conclusory manner). And, importantly, Plaintiff does not allege in either the SAC or his Opposition that he received a right-to-sue letter. (*See generally* SAC; Pl's Opp'n.)

Documents that Plaintiff submitted with his Opposition shed some light on his exhaustion efforts. (*See* Pl's Opp'n 24–33.)[16] Specifically, Plaintiff submitted: (1) a document from the EEOC's website noting that he had an appointment at the EEOC's New York office scheduled for August 9, 2023, (*see id.* at 24); (2) an EEOC "Inquiry Information" print-out, which indicates

---

[16] Beyond the reasons set forth above, *see supra* Section I.A., on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may consider EEOC filings because "they are public documents" and are "integral to Plaintiff's claims." *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010); *see also Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 394 n.1 (S.D.N.Y. 2012) ("Because the EEOC [c]harge is part of an administrative proceeding, the [c]ourt may take judicial notice of it without converting [the] [d]efendant's motion into a motion for summary judgment."); *McLeod v. Lowe's Home Improvement*, Nos. 09-CV-834, 09-CV-835, 2010 WL 4366901, at *2 n.2 (N.D.N.Y. Oct. 28, 2010) ("On [a] Fed. R. Civ. P. 12(b)(6) motion, the [c]ourt may properly consider the EEOC charges and right-to-sue notices because they are public documents in administrative proceedings and are integral to [the] plaintiff's claims.").

Amazon asserts that the Court should also consider a Freedom of Information Act ("FOIA") determination letter, which purportedly "confirm[s] that no records exist of any [EEOC] charge filed by Plaintiff against Amazon as of June 15, 2023." (Def's Mem. 17 & n.6.) However, the Court is unconvinced by the cases Amazon cites in support of its argument that the Court should find that letter to be judicially noticeable, (*see id.* at 17 n.6), as neither of those cases concerns anything like the letter at issue here, *see Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 88 n.2 (2d Cir. 2012) (noting that the court could take judicial notice of the "details of [a] related criminal proceeding"); *Lia v. Saporito*, 909 F. Supp. 2d 149, 175–76 (E.D.N.Y. 2012) (taking judicial notice of a decision rendered by an administrative law judge and a deposition transcript admitted as an exhibit during an administrative hearing), *aff'd*, 541 F. App'x 71 (2d Cir. 2013) (summary order). Indeed, courts have been hesitant to judicially notice FOIA-related documents. *105 Mt. Kisco Assocs. LLC v. Carozza*, No. 15-CV-5346, 2019 WL 6998008, at *11 (S.D.N.Y. Dec. 20, 2019) (explaining that, "where documents must be obtained through a FOIA request (or state equivalent) they cannot be deemed to contain facts that are *readily* determined" (emphasis in original)); *see also Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) (explaining that a letter that could only be obtained from FDA through a FOIA request was not judicially noticeable); *White Plains Hous. Auth. v. Getty Properties Corp.*, No. 13-CV-6282, 2014 WL 7183991, at *2 (S.D.N.Y. Dec. 16, 2014) (declining to judicially notice materials—which the court described as "an assortment of discovery materials"—that had been acquired through New York's Freedom of Information Law).

that he submitted an "initial inquiry" with the EEOC on March 28, 2023, and that he had not

previously filed a charge or complaint on his claim with either the EEOC or another agency, (*see*

*id.* at 25–30); and (3) his EEOC Charge of Discrimination form, which is dated August 9, 2023,

(*see id.* at 31–33).

On this record, the Court has little trouble concluding that Plaintiff failed to exhaust his

administrative remedies as they relate to his Title VII claims.  To start, Plaintiff filed his charge

with the EEOC no earlier than August 9, 2023, *after* he initiated this Action on May 24, 2023

and filed the operative SAC on July 17, 2023.  (*See* Compl. (Dkt. No. 1); SAC.)  And—beyond

his failure to allege that he received a right-to-sue letter—the fact that he did not file his charge

with the EEOC until after he filed the SAC necessarily means that he had not yet received such a

letter from the EEOC when he filed the SAC.  Thus, the Court must dismiss Plaintiff's Title VII

claims in light of his failure to exhaust available administrative remedies.  *See Oparaji*, 2024 WL

3046120, at *5 (dismissing Title VII claims where the plaintiff did not allege that he "filed

timely charges with the EEOC, or that he received a right-to-sue letter before initiating this

lawsuit"); *Sall v. Greater Burlington YMCA*, No. 20-CV-214, 2023 WL 2585032, at *4 (D. Vt.

Mar. 20, 2023) (dismissing the plaintiff's claim where he failed to specify whether and when he

filed a charge with the EEOC and received a right-to-sue letter, finding that "[i]n the absence of

an exhaustion of administrative remedies and more precise allegations, Plaintiff's [complaint]

fails to state a Title VII claim upon which relief can be granted"); *Staten v. Patrolmen's*

*Benevolent Ass'n of City of N.Y., Inc.*, 282 F. Supp. 3d 734, 742 (S.D.N.Y. 2017) (dismissing

Title VII claims where the plaintiff did not receive a right-to-sue letter prior to filing the lawsuit),

*aff'd*, 736 F. App'x 17 (2d Cir. 2018) (summary order); *Constantine v. U-Haul Int'l, Inc.*, No.

15-CV-1204, 2015 WL 7272211, at *2 (N.D.N.Y. Nov. 16, 2015) (dismissing the plaintiff's

Title VII claim where she failed to demonstrate that she had received an EEOC right-to-sue letter); *Parker v. Mack*, No. 09-CV-1049, 2010 WL 11507368, at *3 (W.D.N.Y. Jan. 4, 2010) (holding that the plaintiff's Title VII claim was subject to dismissal where he did not submit a copy of his EEOC right-to-sue letter); *see also Walters v. MedBest Med. Mgmt., Inc.*, No. 14-CV-572, 2015 WL 860759, at *4 (N.D.N.Y. Feb. 27, 2015) (dismissing a Title VII claim where the complaint indicated that the plaintiff's charges before the New York State Division of Human Rights were "currently pending," holding that "[the p]laintiff has clearly failed to comply with the exhaustion requirements under Title VII, as she did not wait for the EEOC to dismiss the charges (or fail to act) before commencing this action").[17]

Plaintiff argues that he made reasonable efforts to comply with applicable administrative requirements, (*see* Pl's Opp'n 6–8), and, in support of that argument he cites to "*Avillan v. Brennan*, No. 19 Civ. 10291, 2020 WL 4505621[,] at *3 (S.D.N.Y. Aug. 4, 2020)," (*id.* at 8 (italics added)). However, the database identifier that he cites is, in fact, for *United States v. Adams*, No. 10-CR-82, 2020 WL 4505621 (S.D.N.Y. Aug. 4, 2020). And *Adams* merely notes that an incarcerated individual had exhausted his administrative remedies before moving for compassionate release in light of the COVID-19 pandemic. *Id.* at *2. The Court was able to locate two decisions from the *Avillan v. Brennan* case. *See Avillan v. Brennan (Avillan II)*, No. 16-CV-5611, 2018 WL 4680027 (S.D.N.Y. Sept. 28, 2018); *Avillan v. Brennan (Avillan I)*, No. 16-CV-5611, 2017 WL 11616624 (S.D.N.Y. Sept. 15, 2017). However, neither of those decisions supports any sort of "reasonable efforts" test that excuses a plaintiff's failure to exhaust administrative remedies. *See Avillan II*, 2018 WL 4680027, at *6 (dismissing certain of the

---

[17] The Court notes that Plaintiff does not raise any equitable arguments for his failure to exhaust administrative remedies in connection with his Title VII claims. *See Hardaway*, 879 F.3d at 489, 491 (explaining that failure-to-exhaust arguments are subject to equitable defenses).

plaintiff's claims because they either could not have been or were not alleged to have been administratively exhausted); *Avillan I*, 2017 WL 11616624, at *3 (merely setting forth the requirements for administrative exhaustion).[18]

   With regard to Plaintiff's ADEA claim, the Court concludes that Plaintiff *has* exhausted his administrative remedies.  Again, in contrast to his Title VII claims, Plaintiff was not required to receive a right-to-sue letter before filing a complaint in federal court asserting an ADEA claim.  *See Kaba*, 2024 WL 1679327, at *3.  Thus, Plaintiff was only required to file a charge with the EEOC within 300 days of the allegedly discriminatory practice.  *See Doolittle*, 2023 WL 7151718, at *4.  Construing Plaintiff's factual allegations liberally and drawing all reasonable inferences in his favor, it appears that the misconduct he alleges took place primarily, if not exclusively, in 2023.  (*See* Pl's Opp'n 10, 27, 31–32.)  And, again, Plaintiff appears to have filed a charge with the EEOC on or around August 9, 2023.  (*See id.* at 31–33.)  *Cf. Martinez v. Long Island R.R. Co.*, No. 18-CV-3075, 2022 WL 20527221, at *22 (E.D.N.Y. Jan. 12, 2022) (explaining that a plaintiff's failure to exhaust can be cured even after they initiate an action in federal court); *Arroyo-Horne v. City of New York*, No. 16-CV-3857, 2018 WL 4259866, at *8 (E.D.N.Y. Sept. 5, 2018) (same).  Thus, drawing all reasonable inferences in his favor, Plaintiff has exhausted the applicable administrative remedies with respect to his ADEA claim.

---

[18] Finally, the Court notes that the case number Plaintiff cites—19-CV-10291—is, in fact, associated with yet another case in this District—*Tucker v. Puma North America, Inc.*  However, a review of the docket for that case revealed no court decisions discussing administrative exhaustion.  (*See generally* 19-CV-10291 Dkt. (S.D.N.Y.).)  *See also Tucker v. Amazon.com, Inc.*, No. 19-CV-9841, 2021 WL 185211, at *1 (S.D.N.Y. Jan. 19, 2021) (noting *Tucker v. Puma North America* raised Americans with Disabilities Act claims "based on a business's failure to provide Braille gift cards" but that the court had dismissed those claims under Rule 12(b)(6)).

\*          \*          \*

In sum, the Court dismisses Plaintiff's Title VII claims (Claims I–IV) in light of Plaintiff's failure to exhaust his administrative remedies, but rejects Amazon's contention that it should do the same with respect to Plaintiff's ADEA claim (Claim VII).[19]

### 3.  The ADEA

Turning to Plaintiff's ADEA claim, Amazon contends that—on the merits—Plaintiff has failed to state a plausible claim for age discrimination.  (*See* Def's Mem. 25.)  In light of Plaintiff's pro se status, the Court construes his allegations liberally as raising an ADEA claim based on both a disparate-treatment and a disparate-impact theory.  *See Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 88 (2008) (explaining that disparate-treatment claims concern "discriminatory intent" and disparate-impact claims concern "discriminatory result").

### a.  Disparate Treatment

"The ADEA protects employees over [forty] years of age from age discrimination in employment."  *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 157 (S.D.N.Y. 2022) (citing 29 U.S.C. § 631(a)).  "In order to establish a prima facie case of age discrimination in violation of the ADEA, a plaintiff must show: (1) that he was within the protected age group (more than [forty] years old); (2) that he was qualified for his position; (3) that he experienced adverse employment action; and (4) that such action occurred under circumstances giving rise to

---

[19] The Court therefore will not reach the Parties' merits arguments with respect to Plaintiff's Title VII claims.  However, to the extent Plaintiff seeks to raise an independent "Mixed Motive Retaliation" claim under Title VII, (*see* SAC 16–18), the Court notes that the Supreme Court has made clear that the "mixed motive" framework does not apply to retaliation claims under Title VII.  *See Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019) ("The [Supreme] Court [has] held that even though Title VII permits mixed-motive causation for claims based on the personal characteristics of race, color, religion, sex, or national origin (i.e., 'status-based' discrimination), it does not permit mixed-motive causation for retaliation-based claims." (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013))).

an inference of discrimination." *Kaba*, 2024 WL 1679327, at *3 (citing *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)); *see also Santiago*, 634 F. Supp. 3d at 157 (same). Crucially, for ADEA claims, a plaintiff must show that the discriminatory motive "was a but[-]for cause" of the adverse employment action, as opposed to just a factor in the decision. *McCormack v. IBM*, 145 F. Supp. 3d 258, 266 (S.D.N.Y. 2015) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173 (2009)); *Santiago*, 634 F. Supp. 3d at 157 (same). To establish causation under that standard, "the plaintiff must plead facts suggesting 'that age was the reason that the employer decided to act.'" *Santiago*, 634 F. Supp. 3d at 157 (quoting *Gross*, 557 U.S. at 176). In other words, "'but-for' causation does not require proof that [discrimination] was the *only* cause of the employer's action, but [rather] that the adverse action would not have occurred in the absence of the [discriminatory] motive." *Id.* (emphasis added) (citing *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 n.5 (2d Cir. 2013)).

Amazon does not appear to dispute that Plaintiff was over forty years old during the relevant time period, or that he was qualified for his position at SWF1. (*See* Def's Mem. 25; Def's Reply 11–12.) However, although Amazon fails to make this argument, (*see* Def's Mem. 25; Def's Reply 11–12), even assuming that he suffered the requisite adverse employment action, Plaintiff's claim under the ADEA must fail because he has not plausibly alleged that his age was a but-for cause of such an action.

In the SAC, Plaintiff alleges that Amazon has been "systematically increasing workload and responsibility while simultaneously reducing resources and time for task completion" for employees over the age of forty, like Plaintiff. (*See* SAC 23; *see also id.* ("By increasing the workload and performance measurements of those aged [forty] and above, while reducing their resources and time, the defendant created a setting where these employees, including the

plaintiff, are set up to underperform, thereby limiting their opportunities for advancement.").)

However, Plaintiff makes no allegations even suggesting that age was the reason behind

Amazon's alleged decision to increase his workload or reduce the support available to him.  *See*

*Lively v. WAFRA Inv. Advisory Grp.*, Inc., 6 F.4th 293, 302–03 (2d Cir. 2021) ("[I]t is not

sufficient for a plaintiff to show that age was simply a motivating factor in the employer's

adverse action.  Instead, the ADEA's requirement that an employer took adverse action 'because

of' age requires that age was the 'reason' that the employer decided to act.").  For example, he

"does not allege that anyone ever commented on his age or insinuated that he was too old to

perform his job."  *Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416, 2019 WL 3202747,

at *6 (S.D.N.Y. July 16, 2019).  Rather, he raises only the type of vague, threadbare, and wholly

speculative allegations that motions to dismiss are meant to weed out.  *See Iqbal*, 556 U.S. at 662

(explaining that "a complaint [does not] suffice if it tenders naked assertions devoid of further

factual enhancement.")  That simply will not suffice to survive Amazon's Motion, as Plaintiff

fails to plead sufficient facts to permit the Court "to infer more than the mere possibility of

misconduct."  *See id.* at 679.

Plaintiff does allege that he was eventually replaced by one or more younger employees.

(*See* Pl's Opp'n 18.)  However, "an allegation that plaintiff was replaced by a younger employee

is not sufficient, without more, to survive a motion to dismiss."  *Nance v. City of New York*, No.

09-CV-2786, 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011); *see also Marcus v. Leviton*

*Mfg. Co., Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016) (summary order) ("Without more, the mere

fact that an older employee was replaced by a younger one does not plausibly indicate

discriminatory motive."); *Murillo-Roman v. Pension B.ds - United Church of Christ*, No. 22-CV-

8365, 2024 WL 246018, at *12 (S.D.N.Y. Jan. 23, 2024) ("That two younger employees were

hired to perform some of [the plaintiff's] tasks is not enough by itself to establish an inference

that Plaintiff's age was a but-for cause of her termination."); *Maines v. Last Chance Funding,*

*Inc.*, No. 17-CV-5453, 2018 WL 4558408, at *16 (E.D.N.Y. Sept. 21, 2018) (granting motion to

dismiss ADEA claim where "[t]he only support provided is that [the plaintiffs] were replaced by

younger employees," because "this allegation, without more, cannot establish 'but for'

causation").  Indeed, Plaintiff does not even specify the age of the individual or individuals who

purportedly replaced him.  "Absent any indication of the younger individual's age, any inference

of discrimination on the basis of this allegation would be purely speculative." *Shlafer v.*

*Wackenhut Corp.*, 837 F. Supp. 2d 20, 26 (D. Conn. 2011) (citing *Iqbal*, 556 U.S. at 678); *see*

*also Williams v. Victoria's Secret*, No. 15-CV-4715, 2017 WL 384787, at *10 (S.D.N.Y. Jan. 27,

2017) (dismissing claim because the plaintiff's "bare assertion that he was replaced by a younger

person is insufficient to create an inference of discriminatory intent"), *adopted by* 2017 WL

1162908 (S.D.N.Y. Mar. 28, 2017); *Payne v. Malemathew*, No. 09-CV-1634, 2011 WL

3043920, at *2 n.3 (S.D.N.Y. July 22, 2011) (noting that "allegations that [the] plaintiff

performed satisfactorily and was replaced with a younger person merely allow for the possibility

that age discrimination was at work but do not raise that possibility above a speculative level");

*Adams v. N.Y.S.Educ. Dep't*, 752 F. Supp. 2d 420, 465 (S.D.N.Y. 2010) (finding the plaintiffs'

age discrimination claim "insufficient as a matter of law" where "[t]he claim merely alleges that

[the] plaintiffs are over [forty] years of age and were replaced by younger teachers," and

therefore "merely repeats the statutory elements, without setting out any facts from which age

discrimination can be inferred"), *aff'd*, 460 F. App'x 67 (2d Cir. 2012) (summary order); *cf.*

*Blige v. City Univ. of N.Y.*, No. 15-CV-8873, 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017)

("Numerous courts within the Second Circuit have granted motions to dismiss disparate

treatment claims where the complaint was entirely devoid of any details regarding the purported

comparators, e.g., who they are, what their positions or responsibilities were at the company,

how their conduct compared to [the] plaintiffs'[,] or how they were treated differently by [the]

defendants." (alteration adopted) (italics, quotation marks, and citation omitted)), *report and*

*recommendation adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017).  In sum, insofar as he

raises an ADEA claim based on a disparate-treatment theory, Plaintiff's claim must fail.[20]

### b.  Disparate Impact

The ADEA prohibits employers from "limit[ing], segregat[ing], or classify[ing its]

employees in any way which would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect his status as an employee, because of such

individual's age." 29 U.S.C. § 623(a)(2).  "It thus gives rise to disparate-impact claims, which

. . . [, l]ike pattern-or-practice disparate[-]treatment claims, . . . are attacks on the systemic results

of employment practices."  *Doheny v. Int'l Bus. Machs., Corp.*, — F. Supp. 3d —, 2024 WL

382142, at *8 (S.D.N.Y. Feb. 1, 2024) (quotation marks and citation omitted)).  To establish a

---

[20] None of the cases Plaintiff relies upon in his Opposition changes this analysis.  (*See* Pl's Opp'n 18.)  In *Hazen Paper Co. v. Biggins*, the Supreme Court addressed issues that are plainly irrelevant here—whether "an employer's interference with the vesting of pension benefits violate the ADEA" and the appropriate standard for liquidated damages under the ADEA where the predicate ADEA violation is "an informal decision by the employer that was motivated by the employee's age." *See* 507 U.S. 604, 608 (1993).  As to the other two cases Plaintiff cites in support of his ADEA claim, the Court notes that the citations provided in the Opposition are to different cases than those names, neither of which concern the ADEA.  Although the Court located *Diaz v. Kraft Foods Glob., Inc.*, that case involves race discrimination claims under Title VII and 42 U.S.C. § 1981, not age discrimination claims.  *See generally* 653 F.3d 582 (7th Cir. 2011).  Finally, the Court was unable to locate any decision in *Villarreal v. El Chile* that relates in any way to this case.  *See generally* 76 F. Supp. 2d 778 (N.D. Ill. 2011) (assessing a motion for partial summary judgment on the plaintiff's claims under the FLSA and the Illinois Minimum Wage Law); 266 F.R.D. 207, 208 (N.D. Ill. 2010) (addressing a motion to compel responses to interrogatories and a motion for a protective order); 601 F. Supp. 2d 1011, 1012 (N.D. Ill. 2009) (consider motions to dismiss counterclaims regarding indemnification and the duty of loyalty).

disparate-impact claim, a plaintiff "must provide factual allegations that plausibly "(1) identify a specific[, neutral] employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Id.* at *9 (quoting *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020)).

With respect to the first element, "a plaintiff is 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Eidinger v. PRIMMA, LLC*, No. 19-CV-3219, 2022 WL 17685444, at *7 (E.D.N.Y. Nov. 1, 2022) (emphasis in original) (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005). "To identify a specific, neutral employment policy, a plaintiff must identify the criteria, specific test, requirement, or practice within the policy that has an adverse impact on older workers[.]" *Doheny*, 2024 WL 382142, at *9 (alteration adopted) (quotation marks and citations omitted) (first quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 988 (1988), and then quoting *Smith*, 544 U.S. at 241). Importantly, "[m]erely identifying a generalized policy or an imbalance in the work force does not suffice." *Id.* (quotation marks and citations omitted).

The Court concludes that Plaintiff's ADEA claim based on a disparate-impact theory fails at the first step. As noted, Plaintiff vaguely alleges that Amazon has been "systematically increasing workload and responsibility while simultaneously reducing resources and time for task completion" for employees like Plaintiff who are over the age of forty. (SAC 23.) As an initial matter, this alleged employment policy is not "facially *neutral* in [its] treatment of different groups," *Hazen Paper Co.*, 507 U.S. at 609 (emphasis added); indeed, as alleged, Amazon's policy *only* impacts employees over forty, which "sounds in intentional discrimination and, thus, in disparate treatment," not disparate impact, *Doheny*, 2024 WL 382142, at *9. Moreover, this alleged practice is in no way "specific[.]" *Id.* (quoting *Mandala*, 975 F.3d at

207).  In particular, Plaintiff fails to identify any "criteria," *Watson*, 487 U.S. at 988, or "specific test, requirement, or practice within [the policy] that has an adverse impact on older workers," *Smith*, 544 U.S. at 241.  Thus, Plaintiff's allegations do not suffice to state an ADEA claim based on a disparate-impact theory.  *See Doheny*, 2024 WL 382142, at *9 (dismissing a disparate-impact claim under the ADEA where the plaintiff alleged that the defendant "disproportionately end[ed] the employment of older employees" and "prevent[ed] those employees from consideration for other open internal [] positions for which they [were] qualified" because, even if those policies were neutral, they were not sufficiently specific); *see also Plank v. Town of Wilton*, No. 23-CV-808, 2024 WL 4063879, at *5 (D. Conn. Sept. 5, 2024) (dismissing an ADEA disparate impact where the policies of the defendant-municipality were alleged to have been facially *discriminatory* rather than facially *neutral*).

*          *          *

Accordingly, the Court dismisses Plaintiff's ADEA claim—i.e., Claim VII in the SAC.

### 4.  Claims Under the OSH Act

Amazon also argues that Plaintiffs claims that arise out of the OSH Act must be dismissed because that statute does not create any private right of action.  (*See* Def's Mem. 23–24.)  The Court agrees.

The law has long been crystal clear that plaintiffs cannot "bring a lawsuit under" the OSH Act.  *Quirk v. DiFiore*, 582 F. Supp. 3d 109, 115 (S.D.N.Y. 2022); *accord Mercer v. Viacomcbs/Paramount*, No. 22-CV-6322, 2024 WL 3553133, at *7 (S.D.N.Y. July 26, 2024) (same); *see also Donovan v. Occupational Safety & Health Rev. Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983) ("Under [the OSH Act], employees do not have a private right of action."); *Women of Color for Equal Just. v. City of New York*, No. 22-CV-2234, 2022 WL 17083109, at *3

(E.D.N.Y. Nov. 18, 2022) (noting that "no private right of action exists" under the OSH Act); *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, No. 12-CV-7460, 2013 WL 4565037, at *7 (S.D.N.Y. Aug. 28, 2013) (collecting cases and explaining that the "statutory scheme [of the OSH Act] envisions that the public rights created by the Act are to be protected by the Secretary [of Labor] and that enforcement of the Act is the sole responsibility of the Secretary" (second alteration in original) (quotation marks omitted)).  Thus, Plaintiff's claims that purport to arise under the OSH Act—Claims V and VI in the SAC—are, as they must be, dismissed.  These claims are dismissed with prejudice.  *See Maack v. Wyckoff Heights Med. Ctr.*, No. 15-CV-3951, 2016 WL 3509338, at *17 (S.D.N.Y. June 21, 2016) (dismissing an OSH Act-based claim with prejudice because there is no private right of action under that statute).

### 5.  Negligence

With regard to Plaintiff's negligence claim, Amazon asserts that that claim is barred by Workers' Compensation exclusivity.  (*See* Def's Mem. 25–26.)

"Under New York law, common law negligence claims arising from workplace injuries are precluded by New York Workers' Compensation Law, which provides the exclusive remedy for negligence claims against an employer."  *Lin v. Amazon.com, Inc.*, No. 21-CV-6203, 2023 WL 5720063, at *3 (E.D.N.Y. Sept. 5, 2023) (quotation marks omitted); *see also Ferris v. Delta Airlines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001) ("[S]tate common law negligence claims are . . . precluded by the exclusive remedy provisions of New York Workers' Compensation statute."); *Cukar v. Compass Grp., USA, Inc.*, No. 21-CV-7626, 2024 WL 917612, at *5 (S.D.N.Y. Mar. 4, 2024) (explaining that New York's Workers' Compensation Law "provides workers with a statutory remedy for injuries incurred in connection with employment, and at the same time limits availability of other remedies"); *Kamdem-Ouaffo v. Balchem Corp.*, No. 17-CV-281, 2018

WL 4386092, at *17 (S.D.N.Y. Sept. 14, 2018) ("New York Workers' Compensation Law bars employees from maintaining common-law actions to recover damages arising out of employer's negligence." (citing N.Y. Workers' Comp. Law § 29(6))); *Johns v. Home Depot U.S.A., Inc.*, No. 03-CV-4522, 2005 WL 545210, at *8 (S.D.N.Y. Mar. 8, 2005) ("In New York, recovery for accidental injuries arising out of and in the course of employment, including injuries caused by an employer's negligence, is governed by the Workers' Compensation Law." (citation omitted)), *aff'd sub nom.* 180 F. App'x 190 (2d Cir. 2006) (summary order).

Plaintiff's negligence claim unambiguously focuses on physical and emotional injuries that he sustained in the course of his employment after Atwell allegedly ordered SWF1's conveyors to be modified in an unsafe manner. (*See* SAC 24–25; Pl's Opp'n 11–14.) Specifically, he alleges that he injured at least one finger on his right hand when he was using one of Amazon's conveyors, which was moving at an unsafe speed in light of the modifications that Atwell put in place. *See supra* Section I.B.2. On this record, there is no question that Plaintiff's negligence claim—stemming from injuries allegedly sustained while he was at work—is barred by Workers' Compensation exclusivity. *See Patterson v. Xerox Corp.*, 732 F. Supp. 2d 181, 194 (W.D.N.Y. 2010) (holding that "negligence claims asserted against [an employer] must [] be dismissed because the New York State Worker's Compensation Law exclusively governs negligence claims against employers"); *see also Kamdem-Ouaffo*, 2018 WL 4386092, at *17 (dismissing a negligence claim arising from a workplace injury on the basis that it was barred by Workers' Compensation exclusivity).

The Court recognizes that "[t]here may be an exception to the exclusivity of the Workers' Compensation Law[] . . . 'where injury is sustained to an employee due to an intentional tort perpetrated by the employer or at the employer's direction.'" *Lin*, 2023 WL 5720063, at *3

(quoting *Arbouin v. Bob's Disc. Furniture*, LLC, No. 20-CV-1893, 2021 WL 4813228, at *10

(E.D.N.Y. June 30, 2021), *report and recommendation adopted*, 2021 WL 4458932 (E.D.N.Y.

Sept. 29, 2021)); *see also Acevedo v. Consol. Edison Co. of N.Y.*, 596 N.Y.S.2d 68, 70–71 (App.

Div. 1993) (discussing the intentional-tort exception to Workers' Compensation exclusivity).

"To sufficiently plead the exception, 'there must be alleged an intentional or deliberate act by the

employer *directed at causing harm* to the particular employee.'" *Lin*, 2023 WL 5720063, at *3

(emphasis added) (quoting *Acevedo*, 596 N.Y.S.2d at 71).  Here, even construing Plaintiff's

allegations liberally, the SAC and his Opposition are devoid of any suggestion that the conveyors

were modified in order to harm Plaintiff.  (*See generally* SAC; Pl's Opp'n.)  Indeed, Plaintiff's

suggestion that Atwell had "reflectors" installed on the conveyor to increase worker productivity

would seem to belie any such assertion.  (SAC 19.)

In sum, Plaintiff's negligence claim—Claim VIII in the SAC—is dismissed.[21]

### 6.  IIED

Amazon also argues that Plaintiff has failed to state a plausible IIED claim.  (*See* Def's

Mem. 29–30.)

"The state-law tort of [IIED] has four elements: (1) extreme and outrageous conduct, (2)

intent to cause severe emotional distress, (3) a causal connection between the conduct and the

injury, and (4) severe emotional distress."  *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-

6301, 2018 WL 1626175, at *23 (S.D.N.Y. Mar. 30, 2018) (quoting *Bender v. City of New York*,

78 F.3d 787, 790 (2d Cir. 1996)); *see also Panchishak v. County of Rockland*, No. 20-CV-10095,

---

[21] Plaintiff's reliance on *Roberts v. Babkiewicz*, 582 F.3d 418 (2d Cir. 2009) (per curiam), for the proposition that his negligence claim "merit[s] the full exploration of discovery to ensure a fair adjudication[,]" is unavailing, (Pl's Opp'n 14).  That case—which considered whether a certain procedure under Connecticut law barred malicious prosecution claims—says nothing to suggest that a plaintiff's claims warrant discovery even where they fail to state a plausible claim as a matter of law.  *See generally Roberts*, 582 F.3d at 420–22.

2021 WL 4429840, at *8 (S.D.N.Y. Sept. 27, 2021) (same). "New York courts have imposed a very high threshold for [IIED] claims, requiring that the conduct must be so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *33 (S.D.N.Y. Sept. 29, 2023) (quoting *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005)); *see also Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1178 (N.Y. 2016) (similar).

"The Second Circuit has suggested that sufficient . . . outrageous behavior could be 'some combination' of alleged 'public humiliation, . . . verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy' with false accusations of criminal conduct." *Truman v. Brown*, 434 F. Supp. 3d 100, 120 (S.D.N.Y. 2020) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 828–29 (2d Cir. 1999)); *see also Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 180 (E.D.N.Y. 2017) (same). "Courts are [therefore] generally loath to find that conduct involving discrimination or harassment in the course of employment is sufficient for a claim of IIED." *Padilla v. Sacks & Sacks, LLP*, No. 19-CV-10021, 2020 WL 5370799, at *2 (S.D.N.Y. Sept. 8, 2020). Thus, "[i]n the rare instances where the New York courts have found the complaint sufficient to state a claim for [IIED] in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery." *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 656 (S.D.N.Y. 2015) (citation omitted). Alleging sufficiently "outrageous" conduct is thus a very high bar. *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 375 (S.D.N.Y. 2016) ("[E]ven a false charge of sexual harassment does not rise to the level of outrage required under New York law." (citation omitted)).

"The determination [of] whether the requisite outrageousness has been established is, in the first instance, an issue of law for the courts." *Cavallaro v. Pozzi*, 28 A.D.3d 1075, 1078, 814 N.Y.S.2d 462, 465 (2006). And here, Plaintiff has failed to plausibly allege extreme and outrageous conduct. In the SAC, Plaintiff seeks to establish his IIED claim by pointing to "[D]efendant's intentional retaliation, discrimination, and abusive treatment," including the decision to place Plaintiff on a PIVOT Plan, and an unnamed Defendant's "disregard for the mandatory [p]sychological [s]afety training, completed with sarcasm and lack of commitment." (SAC 36–38.) Additionally, Plaintiff asserts in his Opposition that "Defendant's months-long discriminatory harassment, including a sham performance review and pretextual termination, constitutes extreme and outrageous conduct." (Pl's Opp'n 17.) Plaintiff's allegations simply do not suffice, however, because "[a]cts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain an [IIED] claim because such conduct is not sufficiently outrageous." *Blanco v. Success Acad. Charter Sch., Inc.*, No. 23-CV-1652, 2024 WL 3427076, at *4 (S.D.N.Y. July 16, 2024) (quotation marks omitted); *accord Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) (same); *see also Rodgers-King v. Candy Digital Inc.*, No. 23-CV-2591, 2024 WL 382092, at *9 (S.D.N.Y. Feb. 1, 2024) (concluding that the plaintiff had not alleged extreme and outrageous conduct where he asserted that the defendant "deceived him about his role and discriminated against him by excluding him from key business discussions, preventing him from obtaining the necessary resources, failing to promote him, and [ultimately] terminating him"); *Ibraheem v. Wackenhut Servs., Inc.*, 29 F. Supp. 3d 196, 215 (E.D.N.Y. 2014) ("Generally, ordinary workplace disputes, including . . . discrimination, harassment, and hostile work environment claims . . . , do not rise to the level of extreme and

outrageous conduct necessary to support a claim of IIED."); *Lydeatte v. Bronx Overall Econ.
Dev. Corp.*, No. 00-CV-5433, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001) (dismissing the
plaintiff's IIED claim where the plaintiff alleged that the "defendant was biased against her
based on her race, that she was harassed and treated poorly on the job, and that she was denied
the same benefits, opportunities and conditions of employment as her Hispanic co-workers until
she was ultimately wrongfully terminated").[22]

Accordingly, the Court dismisses Plaintiff's IIED claim, i.e., Claim XIV in the SAC.

### 7.  Remaining Claims

That leaves the following claims: Nonfeasance Termination; Malfeasance PIVOT Plan
and Wrongful Dismissal Termination, Biased Intentional Unjust Treatment Under FMLA, the
FLSA, the NYSHRL, and the NYLL; Discrimination and Preferential Treatment in the Use of
the PIVOT Plan Under the FLSA;[23] and Malfeasance, Nonfeasance, and Misfeasance—that is,
Claims IX–XIII, respectively.  (*See* SAC 25–35.)  The Court concludes that those claims must be
dismissed because Plaintiff abandoned them.  In particular, Plaintiff failed to respond to
Amazon's arguments as to these claims, (*see, e.g.*, Def's Mem. 26–29 (arguing that these claims

---

[22] With regard to the unnamed Defendant's alleged behavior during the psychological
safety training, during which that Defendant is alleged to have been sarcastic, lacked
commitment, mocked the training, and failed to take the training seriously, (*see* SAC 38), the
Court notes that such behavior, while inappropriate, is a far cry from extreme and outrageous
conduct under New York law, *see, e.g.*, *Panchishak*, 2021 WL 4429840, at *8 (concluding that
the complaint did not plausibly allege extreme and outrageous conduct where a defendant "called
[the p]laintiff an 'idiot,' told him he was going to 'fuck him in the asshole with a broomstick,'
and said 'fuck you[,]'" which conduct allegedly caused the plaintiff "severe emotional distress"
(alterations adopted)); *see also Klein v. Metro. Child Servs., Inc.*, 954 N.Y.S.2d 559, 562 (App.
Div. 2012) (dismissing an IIED claim where "the cause of action . . . states little more than the
conclusion that plaintiff suffered extreme and grievous mental distress as a result of the extreme
and outrageous behavior of the defendants" (alterations adopted) (quotation marks omitted)).

[23] Insofar as Plaintiff's Discrimination and Preferential Treatment in the Use of the
PIVOT Plan claim arises under Title VII, (*see* SAC 30–34), that claim is dismissed for the
reasons set forth above as to Plaintiff's other Title VII claims, *see* Section II.B.2.

do not exist and/or are impermissibly duplicative of Plaintiff's other dismissed claims)), nor does

he raise any arguments at all with respect to these claims in his Opposition, (*see generally* Pl's

Opp.).  *See Romain v. State Farm Fire & Cas. Co.*, 639 F. Supp. 3d 416, 421 n.3 (E.D.N.Y.

2022) (holding that "[p]laintiffs appear to have abandoned their claim . . . as they do not address

this claim in their opposition to [d]efendant's [d]ismissal [m]otion"); *Randall v. Dish Net., LLC*,

No. 17-CV-5428, 2018 WL 3235543, at *5 (E.D.N.Y. July 2, 2018) (granting defendant's

motion to dismiss because "the [p]laintiff's failure to address [certain] claims in his opposition

papers to [the] motion [to dismiss]," showed that they were "abandoned") (collecting cases); *see*

*also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL

4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . , a plaintiff

abandons a claim by failing to address the defendant's arguments in support of dismissing that

claim."); *Youmans v. Schiro*, No. 12-CV-3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3,

2013) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims

constitute[s] an abandonment of those claims."); *Robinson v. Fischer*, No. 09-CV-8882, 2010

WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) (report and recommendation) ("Federal courts

have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim

and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing

such a claim.") (collecting cases).  Indeed, "'[i]n the Second Circuit, a plaintiff's failure to

respond to contentions raised in a motion to dismiss constitute[s] an abandonment of those

claims' and *necessitates* their dismissal."  *Maroney v. Woodstream Corp.*, 695 F. Supp. 3d 448,

468 (S.D.N.Y. 2023) (emphasis added) (quoting *Gordon v. Target Corp.*, No. 20-CV-9589, 2022

WL 836773, at *17 (S.D.N.Y. Mar. 18, 2022)); *see also Farrell v. State of New York*, 946 F.

Supp. 185, 196 (N.D.N.Y. 1996) (dismissing a claim for "misfeasance and/or malfeasance"

where the plaintiff failed to oppose the "dismissal of th[o]se 'claims'").  Accordingly, Claims IX–XIII in the SAC are dismissed.

### III.  Conclusion

For the foregoing reasons, the Court grants Amazon's Motion.  Except as to Plaintiff's claims under the OSH Act, which are dismissed with prejudice, the Court's dismissal of Plaintiff's other claims is without prejudice because this is the first adjudication on the merits of his claims against Amazon.  *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").[24]  Should Plaintiff choose to file a third amended complaint to re-plead the dismissed claims, he must do so within thirty days of the date of this Opinion & Order, addressing the deficiencies identified herein.  The amended complaint will replace, not supplement, the Complaint currently before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider, including the identification of individuals and the nature of their involvement.  Further, any amended complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure, provide all relevant dates, and include a short, plain statement of facts sufficient to support Plaintiff's claims.  If Plaintiff fails to abide by the thirty-day deadline, the claims dismissed herein could be dismissed with prejudice.

In addition, as indicated above, Plaintiff has—to date—failed to effect service on the Individual Defendants.  Thus, Plaintiff is ordered to properly serve the Individual Defendants

---

[24] Notwithstanding Amazon's argument to the contrary, (*see, e.g.*, Def's Mem. 30–31 (arguing that the Court should deny Plaintiff leave to amend)), the Court is not convinced that "the flaws in [the SAC] are incurable," *Kling v. World Health Org.*, 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021) (quoting *Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009)).

within thirty days of the date of this Opinion & Order.  If Plaintiff fails to do so, the Court may

dismiss this Action without prejudice as against the Individual Defendants.  *See* Fed. R. Civ.

P. 4(m).

      Finally, the Clerk of Court is respectfully directed to terminate the pending Motion.

(Dkt. No. 33.)

SO ORDERED.

Dated:    September 23, 2024
           White Plains, New York

                                        KENNETH M. KARAS
                                 United States District Judge