UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEITH ASHMEADE,

  *Plaintiff*,

  v.

AMAZON.COM, a/k/a AMAZON.COM
SERVICES LLC., a/k/a AMAZON.COM, INC.,

  *Defendant*.

Case No. 23-CV-4331 (KMK)

ORDER & OPINION

Appearances:

Keith Ashmeade
Modena, NY
*Pro Se Plaintiff*

Eli Zev Freedberg, Esq.
James Fredrick Bryton, Esq.
Thelma Akpan, Esq.
Littler Mendelson, P.C.
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Keith Ashmeade ("Plaintiff") brings this pro se Action against Amazon.com Services

LLC ("Amazon" or "Defendant"), seeking a declaratory judgment, compensatory and punitive

damages, an injunction, and other relief for asserted violations of state and federal laws

forbidding discriminatory employment practices.  (Am. Compl. ("TAC") 42–44 (Dkt. No. 45).)[1]

Plaintiff asserts claims, inter alia, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

---

[1] Unless otherwise indicated, when referencing the Parties' filings in this Action, the
Court refers to page numbers as automatically generated by the Court's Electronic Case Filing
system, which appear on the top-right corner of each page.

§ 2000e, (*id.* at 14–21), the New York State Human Rights Law, (*id.* at 21–23), the Age

Discrimination in Employment Act of 1967, (*id.* at 23–24), and New York State tort law, (*id.* at

25–26). Before the Court is Amazon's Motion to Dismiss the TAC pursuant to Federal Rule of

Civil Procedure 12(b)(6) (the "Motion").  (*See* Mot. to Dismiss (Dkt. No. 49).)  For the following

reasons, the Motion to Dismiss is denied in part and granted in part.

I.  Background

A.  Materials Considered

When he filed the TAC, Plaintiff attached numerous exhibits meant to substantiate his

claims.  (*See, e.g.*, Am. Compl., Ex. H1, at 46 (Dkt. No. 45).)  Plaintiff further included factual

allegations in his Opposition to the instant Motion. (*See generally* Pl.'s Opp'n to Mot. ("Pl.'s

Opp'n") (Dkt. No. 52).)  The Court's analysis begins, therefore, with a determination of which

documents and allegations it should properly consider in deciding the instant Motion.

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the

pleadings themselves" on the basis that "[t]o go beyond the allegations in the [c]omplaint would

convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Federal Rule of

Civil Procedure] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273,

275 (S.D.N.Y. 2002) (citation omitted).  "Nevertheless, the Court's consideration of documents

attached to, or incorporated by reference in the [c]omplaint, and matters of which judicial notice

may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see*

*also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule

12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . . , documents

incorporated into the complaint by reference, and matters of which a court may take judicial

notice" (citation and quotation marks omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir.

2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" (alteration adopted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

When reviewing a complaint submitted by a pro se plaintiff, the Court is less constrained in the materials it may consider. It may look to "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including "[the plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997), "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted) (citation omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation and quotation marks omitted).

In light of the fact that Plaintiff is proceeding pro se, the Court will consider the exhibits attached to the TAC. *Akinlawon v. Polonco*, No. 21-CV-2621, 2023 WL 6216724, at *2 (S.D.N.Y. Sept. 25, 2023) (considering exhibits attached to a pro se complaint when deciding a motion to dismiss); *see also Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 560 n.3 (S.D.N.Y. 2023) (considering three exhibits that were attached to a complaint in connection with deciding a motion to dismiss). For that same reason, the Court will also consider the factual

assertions raised for the first time in his Opposition.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." (italics omitted) (citation omitted)); *Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to an opposition brief given the plaintiff's pro se status); *Gadson*, 1997 WL 714878, at *1 n.2.[2]  Of course, even where the Court considers these assertions, to be credited they nevertheless must satisfy the standards appropriate on a Motion to Dismiss, as described further below.

Finally, the Court notes that, although Plaintiff represents in his opposition brief that he attached "Witness Affidavits," "Safety Reporting Complaints, and "Photographs of Obstruction," no such materials appear on the docket.  (Opp'n 7; *see generally* Dkt.)  Accordingly, the Court has not considered them.  Without their being placed before the Court, the Court does not credit Plaintiff's conclusory allegations as to the contents of these documents.  *See Bayne v. NAPW, Inc.*, No. 18-CV-3591, 2024 WL 633164, at *2 n.6 (E.D.N.Y. Feb. 6, 2024) (treating as undisputed facts that were supported only by an "incomplete citation with reference to an exhibit that does not exist in the record"), *report and recommendation adopted*, 2024 WL 1254197 (E.D.N.Y. Mar. 25, 2024); *Roman v. Quiros*, No. 22-CV-911, 2022 WL 3912349, at *4–5 (D. Conn. Aug. 31, 2022) (rejecting allegations that were not contained in an amended complaint but appeared exclusively in attachments that were themselves pleadings from other cases); *Colo. Sky Indus. Supply, LLC v. Easy St. Servs. Co.*, No. 19-CV-1774, 2020 WL 4539629, at *2 (D. Colo.

---

[2] Accordingly, the Court rejects Amazon's assertions that it should not consider the factual assertions in Plaintiff's Opposition and the exhibits attached to the TAC.  (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") 14–16 (Dkt. No. 50).)

Aug. 6, 2020) ("The court generally will not consider exhibits that have not been submitted by the plaintiff [in the absence of those materials being judicially noticeable and undisputedly accurate copies of the materials having been submitted to the court]."); *McFarland-Lawson v. US Dep't of Hous. & Urb. Dev.*, No. 16-CV-685, 2016 WL 7351517, at *3 (E.D. Wis. Dec. 19, 2016) ("Because the plaintiff did not attach the document to her complaint, however, the court doesn't know what the final order said.").

Plaintiff raised additional allegations in a sur-reply brief that he filed without leave of the Court. (*See* Pl's Second Response to Mot. to Dismiss ("Pl.'s Sur-reply") (Dkt. No. 54).) Sur-replies are not permitted under the Court's Individual Rules. *See* Individual Rules of Practice of the Honorable Kenneth M. Karas, II.B ("Sur-reply memoranda will not be accepted without prior permission of the Court."). Although the Court would be justified in disregarding these allegations on the basis of their being raised for the first time in the Sur-reply, in recognition of Plaintiff's pro se status the Court has considered these allegations. *See Hughes v. Butt*, No. 17-CV-1151, 2019 WL 6970794, at *5 n.3 (N.D.N.Y. Sept. 17, 2019) ("[G]iven the [p]laintiff's pro se status and the 'special solicitude' granted to pro se litigants, the [c]ourt considered the arguments contained in [the] [p]laintiff's sur-reply."), *report and recommendation adopted*, 2019 WL 6914776 (N.D.N.Y. Dec. 19, 2019). The Court further notes that these additional materials do not change the Court's analysis as to the disposition of any of the claims discussed herein.

After briefing, Plaintiff repeatedly requested that the Court look to certain materials that were submitted in conjunction with a charge of discrimination Plaintiff submitted to the EEOC, and requested the production of these materials. (Letter from Keith Ashmeade to Court (July 31, 2025) (Dkt. No. 63); Letter from Keith Ashmeade to Court (July 31, 2025) (Dkt. No. 65); Letter from Keith Ashmeade to Court (July 31, 2025) (Dkt. No. 66).) As the Court explained in its

Memo Endorsement dated July 29, 2025 (Dkt. No. 62) and Memo Endorsement dated August 4, 2025 (Dkt. No. 67), the Court will not consider the allegations Plaintiff references in these filings, as they were not timely put before the Court in connection with the TAC.

B. Factual Background

Unless otherwise stated, the following facts are drawn from the TAC, Plaintiff's Opposition, and the exhibits attached to those documents.  The facts alleged are assumed true for the purpose of resolving the instant Motions.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).  The Court need not, and does not, accept any legal conclusions contained in Plaintiff's filings as true. *See Cadet v. All. Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 219 (S.D.N.Y. 2022) ("Even in the pro se context, the Court is not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" (italics omitted) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).

1. The Parties

Plaintiff is an African American man and, during the time period relevant to this case, he was approximately fifty years old.  (*See* TAC 8, 23.)  Amazon is a company engaged, among other things, in online retail services.  (*Id.* at 1.)

Beginning some time in 2021, Plaintiff was employed by Amazon as an "L5 Operations Manager II" at its SWF1 Fulfillment Center ("SWF1") in Rock Tavern, NY.  (*Id.*)  He held this position for approximately two years and four months.  (*Id.*)  His employment was terminated on or about May 9, 2023.  (*Id.*)

2. Plaintiff's Allegations of Discrimination & Workplace Safety Issues[3]

Plaintiff alleges that, during his employment at Amazon, he was subject to "discriminatory, retaliatory, and abusive actions" caused by his direct supervisor, Audrey Atwell, and by a senior employee named Joe McLaughlin. (*Id.* at 8.) He says that this "ordeal" began "on his first day under Atwell's supervision." (*Id.*) He claims that he was "intentional[ly] badger[ed]" and treated in an "emotionally distressing" way. (*Id.*) Specifically, Plaintiff claims that Atwell "exploited Amazon's Thrive document—a tool meant to review performance and set improvement goals—by conducting an unprecedented and unwarranted review of the [p]laintiff's work history spanning 280 days, well beyond her tenure as his supervisor." (*Id.*) This represented a deviation, Plaintiff says, from the standard practice of reviewing his performance during the preceding 30 days. (*Id.*)

Faced with this asserted mistreatment, and frustrated with Atwell's misuse of the Thrive procedure, Plaintiff filed a formal complaint against Atwell. (*Id.*; *see also* TAC, Ex. E1 (Dkt. No. 45-5) (email from Plaintiff to other Amazon employees about Atwell's "demeaning and degrading and unprofessional behavior" and asserting that Atwell "created an environment of harassment").) Plaintiff says that Atwell "retaliated" in response to his complaint, engaging in unspecified escalation that "culminated in the misuse of management tools to target . . . Plaintiff." (TAC 8.)

Documents attached to the TAC shed some further light on the conflict. Plaintiff, for his part, appears to have disagreed with Atwell's management choices. (TAC, Ex. E2 (Dkt. No. 45-

---

[3] The allegations in Plaintiff's Complaint are not always presented chronologically, and so it is somewhat difficult to discern the exact timeline of the misconduct he alleges. Nevertheless, the Court has closely reviewed the Complaint, Opposition, and accompanying exhibits in order to present a cohesive narrative.

3).) He shared this disagreement with Atwell in an email dated February 10, 2023, where he claimed that he and other employees were not being deployed effectively. (*Id.* at 1–2.) An agenda that seems to be from late February 2023 suggests that, at a supervision meeting, Atwell raised several asserted issues with Plaintiff's job performance. These included: asking Plaintiff to input certain days in Amazon's hours-tracking system as vacation days when he did not attend work, (TAC, Ex. A2, at 1 (Dkt. No. 45-4)), raising asserted safety concerns with him, including issues related to the use of the Company's conveyor belt, (*id.* at 3), and requesting that he spend more time delivering feedback to certain employees, (*id.* at 4). An annotated copy of this same agenda, submitted by Plaintiff, explains Plaintiff's position that Atwell took an "overly protective posture" when evaluating the performance of two of Plaintiff's Caucasian coworkers, whom Plaintiff describes as "supervisors" at Amazon. (TAC, Ex. A2a, at 9 (Dkt. No. 45-6).)

After Plaintiff made his investigation request, Atwell purportedly "intensified the hostile work environment." (TAC 8.) Plaintiff says that she "target[ed] Plaintiff and another African American team lead." (*Id.*) Plaintiff and this other team lead were made to work under unusual time pressures: they were allegedly "[a]ssigned workloads five times greater than those given to their Caucasian colleagues," given "insufficient time and resources to complete tasks," and subject to "[m]anipulat[ed] schedules [meant] to create additional pressure." (*Id.*) Moreover, Plaintiff says that they experienced "punitive measures under the guise of productivity tools," and had to complete "burdensome 'Austin Action' tasks." (*Id.* at 9.) Further, Plaintiff claims that Atwell "demanded" he begin to arrive at work earlier in the day, even though he had a "documented need for accommodation to care for his minor children," a request she invoked to his detriment in performance evaluations. (*Id.* at 12.) Plaintiff says that his acceptance of his

role at Amazon was "contingent on [a] work schedule that permitted [him] to provide care as [the] primary provider for underaged dependents." (TAC, Ex. E3, at 6 (Dkt. No. 45-2).)

The crux of Plaintiff's complaints against Atwell, however, hinge on a performance improvement plan, or "PIVOT plan," (the "Plan") she placed him under that "disproportionately targeted" him. (TAC 9.) He claims that the plan was designed such that "Atwell [was] the sole determiner of . . . Plaintiff's success or failure," and "imposed unrealistic expectations." (*Id.*) He explains that the Plan's requirements were mere "pretext" meant to force him into failure. (*Id.*) In an annotated copy of the Plan attached to the TAC, Plaintiff identifies certain progress measures that, he says, represent a five times increase of the standard workload at Amazon. (TAC, Ex. F1, at 2 (Dkt. No. 45-1).) Plaintiff also takes umbrage with the window of time that Atwell considered when reviewing his performance, which he says was too long, and contests several factual characterizations in the document. (TAC, Ex. E3, at 5.)

More generally, Plaintiff claims that although 20% of Amazon's managers were African American, 50% of individuals enrolled in the PIVOT Plan were African American. (TAC 16.) He further asserts that "70% of African American employees subjected to the plan faced termination or demotion, compared to only 30% of similarly situated white employees." (*Id.*) He further claims that "[s]tatistical data and internal records demonstrate" that African American employees at Amazon "faced disproportionately high workloads and stringent deadlines" under PIVOT Plans. (*Id.*)

Plaintiff says that he escalated his complaints about Atwell to senior leadership at Amazon. (TAC 9.) According to an email chain Plaintiff attaches to his TAC, Plaintiff raised "concerns on how the business was being impacted" based on Atwell's decisions, and the PIVOT Plan was imposed on him within 7 days of his complaint. (TAC, Ex. E3, at 4.) Still, he

claims, he received "no meaningful resolution"; the company "appeared to attempt superficial corrections" but nevertheless "reintroduced the PIVOT plan in its original discriminatory form." (TAC 12; *see also* TAC, Ex. E3 (emails from Plaintiff, apparently raising internal complaint at Amazon).)

Plaintiff further maintains that Caucasian Amazon employees were treated more favorably than non-Caucasian employees, including because Atwell would "promot[e] less qualified individuals while denying advancement opportunities to more experienced African American and Hispanic employees" and "[f]orm[] exclusive communication groups with Caucasian employees to undermine the Plaintiff and foster division among the team." (TAC 9.) She purportedly used these communication channels to encourage "Caucasian employees . . . to file complaints against the Plaintiff while undermining his authority." (*Id.*) Atwell also purportedly said that Plaintiff was "the worst manager in the building" in front of his coworkers, which he found humiliating. (*Id.* at 18; *see also id.* at 37.) He claims that Atwell made negative statements about him on the radio, though it is unclear whether these are the same negative comments as the others. (*Id.* at 12.)

Plaintiff specifically faults Atwell for "stat[ing] to Caucasian employees, 'I have always liked you; if I did not like you, you would know.'" (*Id.* at 11.) This comment, he says, reflected racial bias and fostered a racially divisive environment. (*Id.*)  He also claims that Atwell undermined his leadership role in an affinity network for Black Amazon employees "by denying him adequate time and resources" to fulfill that role. (*Id.* at 9.) He was "effectively forced . . . to resign from the position." (*Id.* at 12.) He further claims that Atwell defamed him via radio communications and placed "unfounded safety claims" in his performance reviews. (*Id.* at 10.) Indeed, he says that Atwell "assigned [him] excessive menial tasks, under the guise of safety

10

actions, while also directing [him] to perform unsafe practices." (*Id.* at 13.) He also describes being "demoted," though it appears that this comment was in reference to the change in the nature of his workload. (*E.g. id.* at 18 (describing an unspecified "demotion"); *id.* at 20 (stating that Plaintiff experienced "demotion to menial tasks")). Plaintiff lists a number of witnesses who, he says, "observed the discriminatory treatment and hostile tactics employed by Atwell." (*Id.* at 9.) On two separate occasions, Plaintiff says, Atwell "stated . . . that her actions were directed by higher management," and specifically identified Joe McLaughlin as one of the individuals directing her. (*Id.* at 13.)

In addition to the asserted racial discrimination, Plaintiff says that "Amazon subjected him to disparate treatment based on his age, targeting him for adverse employment actions, including increased workload, demotion, and termination, while favoring younger employees in similar positions." (*Id.* at 23.) The primary example of this purported mistreatment that he offers, however, are remarks from "his supervisor[]" stating that the supervisor was seeking "fresh perspectives" and "younger talent." (*Id.* at 24.) He does not describe the context of these statements. (*See id.*) He also claims obliquely that "Amazon imposed disproportionately harsh standards on him compared to similarly situated younger, non-African American employees" through the PIVOT Plan, and scrutinized his performance more harshly than those colleagues' performances. (*Id.* at 32; *see also id.* at 32–33 ("[M]anagement comments suggesting a preference for 'younger talent' and internal emails discussing 'streamlining leadership' corroborate the intent behind the differential treatment."); *id.* at 41 ("Additionally, management scrutinized his performance more harshly than his younger, non-African American colleagues.").) Further, Plaintiff asserts that an unidentified younger employee received certain

11

software that, he says, he was denied, and that he was removed from critical projects and "effectively replaced" by an unspecified individual in their twenties.  (Sur-reply 14; Opp'n 14.)

Further, Plaintiff says that he reported some "safety concerns" to the company, including "malfunctioning equipment."  (TAC 25.)  Nevertheless, he says, Amazon "directed him to engage in unsafe practices without adequate training or protective equipment."  (*Id.*)  As a result, his hand was injured in a workplace injury while he attempted to repair a malfunctioning conveyor system under unspecified "unsafe conditions."  (*Id.*)  He says that safety reports and his own documented complaints "confirm that Amazon was aware of the hazards and failed to take corrective action."  (*Id.*)

Plaintiff claims that he filed internal complaints about asserted racial discrimination with Amazon's Human Resources Department, reported safety concerns to the company's internal Ethics Hotline and OSHA, and participated in EEOC investigations.  (*Id.* at 2, 18, 20.)  All in all, he claims that the conditions of his workplace were so intolerable that he was forced to resign.  (*Id.* at 37–38.)

C.  Procedural History

Plaintiff filed the instant Action on May 24, 2023.  (*See* Compl. (Dkt. No. 1).)  After he twice amended his complaint of his own accord, (*see* Am. Compl. (Dkt. No. 4); Mot. for Leave to File a Second Am. Compl. (Dkt. No. 6)), Amazon moved to dismiss his Second Amended Complaint, (*see* Mot. to Dismiss (Dkt. No. 33); Mem. in Supp. of Mot. to Dismiss (Dkt. No. 34)).  After briefing was complete on Amazon's Motion, (*see* Pl.'s Resp. to Mot. to Dismiss by Defs. (Dkt. No. 36); Reply Mem. (Dkt. No. 37)), the Court granted the Motion to Dismiss, dismissing most of Plaintiff's claims without prejudice, except for his claims under the OSH Act,

which were dismissed with prejudice. *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *16 (S.D.N.Y. Sept. 23, 2024).

On January 5, 2025, Plaintiff filed his Third Amended Complaint ("TAC"). (TAC.) Amazon moved to dismiss the TAC on May 8, 2025. (*See* Mot.) Plaintiff filed his opposition on May 25, 2025, (Pl.'s Opp'n), and Amazon filed a reply brief on June 12, 2025, (Reply Mem. of L. ("Reply") (Dkt. No. 53)). Plaintiff filed an additional opposition brief, which was effectively a Sur-reply, without leave of the Court on June 13, 2025. (*See* Pl's Sur-reply.) In the name of fairness to the pro se Plaintiff, the Court has nevertheless considered the contents of that additional brief. *See Walsh v. Planned Parenthood Int'l*, No. 23-CV-914, 2024 WL 4276496, at *8 (S.D.N.Y. Sept. 24, 2024) (considering an "unauthorized [s]urreply . . . in the interest of giving the pro se [p]laintiff special solicitude") (italics omitted)).

## II.  Discussion

### A.  Standard of Review

Although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (quotation marks and citation omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

13

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563 (citations omitted), and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.' " (alteration adopted) (quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  But when a plaintiff proceeds pro

14

se, as noted, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted) (citation omitted).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks and citation omitted). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B.  Analysis

The TAC expressly identifies sixteen claims arising under federal and state law.  Those claims include the following:

I.      Race-Based Disparate Treatment Under Title VII, (*see* TAC 14–15);
II.     Race-Based Disparate Impact Under Title VII, (*id.* at 15–17);
III.    Mixed Motive Retaliation Under Title VII, (*id.* at 17–19);
IV.     Race-Based Retaliation Under Title VII, (*id.* at 19–21);
V.      Abuse of Authority Under Title VII and the New York State Human Rights Law, (*id.* at 21–23);
VI.     Discrimination Under the ADEA, (*id.* at 23–24);
VII.    Negligence and Endangerment under New York law, (*id.* at 25–26);
VIII.   Nonfeasance Termination, (*id.* at 26–28);
IX.     Malfeasance PIVOT Plan & Wrongful Dismissal Termination, (*id.* at 28–30);
X.      Biased Intentional Unjust Treatment, (*id.* at 30–31);

15

XI.    Discrimination and Preferential Treatment in the Use of the PIVOT Plan under Title VII and the ADEA, (*id.* at 32–33);

XII.    Malfeasance, Nonfeasance, and Misfeasance, (*id.* at 33–35);

XIII.    Intentional Infliction of Emotional Distress, (*id.* at 35–37);

XIV.    Constructive Discharge Under Title VII and the ADEA, (*id.* at 37–38);

XV.    Hostile Work Environment Under Title VII and the ADEA, (*id.* at 38–40); and

XVI.    Retaliatory Harassment, (*id.* at 40–41).

Construing the TAC generously in light of Plaintiff's pro se status, Court further considers whether the TAC raises claims based on the NYSHRL, including whether it raises a claim for discrimination based on family status, as described further below.

Amazon has moved to dismiss the entirety of Plaintiff's TAC, raising a litany of arguments in support of its Motion. As relevant to the Court's disposition of the Motion, Amazon asserts (effectively re-raising arguments from its Motion to Dismiss the SAC) that Plaintiff: failed to state any plausible claims for race or age discrimination, (*see* Def.'s Mem. 17–25); cannot bring a negligence claim because such a claim is barred by Workers' Compensation exclusivity, (*id.* at 25); raises a variety of claims that either do not exist under the law or that are duplicative of his other claims, (*id.* at 25–27); cannot state a constructive discharge claim because he alleged that Amazon actually terminated his employment, (*id.* at 29–30); and failed to allege extreme and outrageous conduct in connection with his IIED claim, (*id.* at 27–29).[4] The Court will address each of Amazon's arguments to the extent necessary to resolve the instant Motion.

---

[4] Amazon initially renewed its argument that Plaintiff failed to exhaust his administrative remedies with respect to his Title VII and ADEA-based claims. (See Def's Mem. 16–17). However, the company later withdrew this argument because Plaintiff obtained a right to sue letter from the EEOC. (*See* Letter from Eli Z. Freedberg, Esq. to Court (Aug. 9, 2025) (Dkt. No. 68); *id.*, Ex. A (Dkt. No. 68-1) (right to sue letter).)

16

### 1.  Disparate Treatment Claim under Title VII

Plaintiff raises a claim for disparate treatment under Title VII based on his race.  (TAC 14.)  To sustain a Title VII disparate treatment stage at the motion to dismiss stage, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (alterations adopted) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

Read charitably, Plaintiff's complaint includes allegations that he is a member of a protected class,[5] and that he was qualified for the position he held at Amazon.  In moving to dismiss, Defendant accordingly focuses its arguments on the remaining two prongs: it claims that Plaintiff failed to allege that he experienced an adverse employment action and likewise did not plausibly allege facts support the existence of discriminatory intent.  (*See* Def.'s Mem. 18–20.)

The Court readily concludes that Plaintiff has alleged an adverse employment action.  In its briefing, Amazon argues primarily that Plaintiff did not experience an adverse employment action because he did not claim a "materially adverse" change in the terms and conditions of his employment—that is, a change "more disruptive than a mere inconvenience."  (Def.'s Mem. 18 (quotation marks and citations omitted).)  While it is true that, prior to 2024, a plaintiff had to allege a "materially adverse change in the terms and conditions of [a plaintiff's] employment" to

---

[5] Amazon briefly challenges Plaintiff's membership in a protected class in a footnote, (Def's Mem. 18) but the TAC includes allegations that obviously support Plaintiff's being African American, (*see, e.g.*, TAC 8 (alleging that "Plaintiff and another African American team lead" experienced certain behavior by Atwell (emphasis added))).

17

plausibly claim "adverse action" giving rise to a claim under Title VII, *see, e.g.*, *Sanders v.*

*N.Y.C Hum. Res. Admin.*, 361 F.3d 749, 755–756 (2d Cir. 2004) (internal citation omitted), the

standard that applies to such claims was altered by the Supreme Court's 2024 decision in

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). *Muldrow* held that, to allege an adverse

employment action, a plaintiff need not "show . . . that the harm incurred was significant[] [o]r

serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee

must exceed a heightened bar." *Id.* at 355 (internal quotation marks and citation omitted).

Rather, the plaintiff must demonstrate "only some injury respecting her employment terms or

conditions." *Id.*at 359; *see also Back v. Bank Hapoalim, B.M*, No. 24-1064, 2024 WL 4746263,

at *2 (2d Cir. Nov. 12, 2024) (summary order) (noting change in standard after *Muldrow*).

Plaintiff undoubtedly satisfies this requirement at the pleading stage. He alleges that he

was assigned a "workload[] five times greater than those given to [his] Caucasian colleagues,"

and subject to manipulated work schedules, (TAC 8; *see also* TAC 11 (alleging that "Atwell

imposed workloads five times greater on African American employees . . . compared to

Caucasian employees"), and that he was given a workload that consisted of a greater proportion

of menial tasks. Under *Muldrow*, all that is required is that the Plaintiff allege "*some* harm."

*Muldrow*, 601 U.S. at 350 (emphasis added).[6] He has done so. *See Schoenadel v. YouGov Am.*

---

[6] As one recent district court case noted, there exists "some disagreement among district courts as to whether *Muldrow* applies to Title VII cases outside of the context of involuntary job transfers." *John v. Brooklyn Eye Ctr.*, No. 22-CV-6190, 2025 WL 317515, at *4 n.3 (E.D.N.Y. Jan. 28, 2025) (collecting cases). This Court agrees with those decisions that conclude that, given that "the basis for the Supreme Court's decision was the express language of Section § 200e-2(a)(1), the some harm standard likely does apply outside the involuntary transfer context." *Id.* (citation and quotation marks omitted).

In the alternative, the Court holds that, even under the pre-*Muldrow* cases, Plaintiff alleged adverse employment actions. The Second Circuit had long held that adverse actions could include "[a]ny decision by an employer, including the denial of a workplace opportunity

*Inc.*, No. 22-CV-10236, 2025 WL 371089, at *5 (S.D.N.Y. Feb. 3, 2025) (noting that *Muldrow* "rejected the idea that harm must be 'significant' to be actionable under Title VII" and therefore changed the standard applicable to a disparate treatment claim in the Second Circuit, and concluding that there was a "genuine issue of material fact" as to whether changes, including diminished responsibilities, sufficed to sustain a Title VII claim) (citations omitted); *John*, 2025 WL 317515, at *5 (concluding that the plaintiff's claim that she "was assigned to work at a different . . . location [of the defendant employer's business] without a showing of any harm cannot be considered an adverse employment action" under *Muldrow*); *Back*, 2024 WL 4746263 at *2 (concluding that the transfer which the plaintiff-employee "viewed . . . as a demotion" because it moved her away from defendant's "center of power" and would be perceived by her colleagues as a demotion, was an "adverse employment action" under *Muldrow*).  Accordingly, Amazon's arguments—which rely exclusively on earlier cases requiring "materially adverse changes" to employment—are unpersuasive.[7]

---

that materially affects the terms and conditions of employment, can constitute an adverse employment action." *Buon*, 65 F.4th at 80 (citation omitted).  Plaintiff's TAC claims that he was assigned a heavier workload, that he was denied "time and resources to complete tasks" and otherwise subject to an unreasonable work schedule.  (TAC 8–9.)  It is well established that "when an assigned workload is 'disproportionately heavy' it can constitute an adverse employment action." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 451 (S.D.N.Y. 2023) (citation omitted); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015) (noting that the Second Circuit had already held that "the assignment of an excessive workload as a result of discriminatory intent can be an adverse employment action because it is more disruptive than a mere inconvenience or an alteration of job responsibilities" (quotation marks and citations omitted)).  The Second Circuit had consistently concluded that adverse action based on "disproportionately heavy workload" includes where assignments were "regularly reshuffled" to give individuals of one race "more work" than their counterparts of another race, as Plaintiff alleges occurred here. *Feingold v. New York*, 366 F.3d 138, 153 (2d Cir. 2004).

[7] For the same reason, the Court concludes that Plaintiff has plausibly alleged that the PIVOT Plan, too, was an adverse employment action.  Although Amazon argues that it is well established that performance improvement plans cannot constitute adverse employment action, it

19

Plaintiff does not fare so well, however, as to the final element of his Title VII claim. At the pleading stage, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87 (italics omitted) (citation omitted). Such inference can arise from circumstances that include "invidious comments about others in the employee's protected group[,] more favorable treatment of employees not in the protected group[,] . . . or the sequence of events leading to" the alleged adverse action. *Littlejohn*, 795 F.3d at 312 (quotation marks and citation omitted).

Plaintiff has not satisfied this requirement here. To start, the TAC contains no allegations of direct discrimination. While Plaintiff claims that he was disparaged by Atwell, he has not identified any statements she made that included "any mention of Plaintiff's race." *Cooper v. Templeton*, 629 F. Supp. 3d 223, 230 (S.D.N.Y. 2022) (citation omitted), *aff'd sub nom. Cooper v. Franklin Templeton Invs.*, No. 22-2763, 2023 WL 3882977 (2d Cir. June 8, 2023) (summary order). Therefore, the TAC "fails to allege that Defendant [or any of Defendant's employees] made any remarks, whether publicly or privately, that could be viewed as directly reflecting

---

cites only pre-*Muldrow* cases. Since the Supreme Court's *Muldrow* decision, multiple district courts have held that placement on a performance improvement plan (as the PIVOT Plan was alleged to be) can constitute adverse action—including a court resolving another action involving Defendant. *See Stinson v. Morningstar Credit Ratings, LLC*, No. 22-CV-6164, 2024 WL 3848515, at *8 n.5 (S.D.N.Y. Aug. 16, 2024) ("At least one court in this District has applied [the *Muldrow*] standard to hold that a PIP constitutes an adverse employment action. The Court likewise considers [the plaintiff's] 2020 PIP to be an adverse action." (citation omitted)); *Anderson v. Amazon.com, Inc.*, No. 23-CV-8347, 2024 WL 2801986, at *11 (S.D.N.Y. May 31, 2024) ("Under [the *Muldrow*] standard, [the plaintiff] has plausibly alleged that the PIP and her diminished role were adverse actions.").

20

discriminatory animus." *Id.* Indeed, Plaintiff has not even pointed to specific comments that might support an inference of discrimination because they are invidious remarks "about others in the employee's protected group." *Littlejohn*, 795 F.3d at 312; *see also Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 97–98 (S.D.N.Y. 2023) (noting that subjective belief of being discriminated against based on remarks that reference membership in a protected class, either directly or indirectly, does not support an inference of discrimination).

Plaintiff attempts to make the requisite allegations by relying on a "showing of disparate treatment—that is, a showing that an employer treated [P]laintiff less favorably than a similarly situated employee outside . . . [P]laintiff's protected group . . . ." *King v. Aramark Servs. Inc.*, 96 F.4th 546, 563 (2d Cir. 2024) (alteration adopted) (quotation marks omitted) (quoting *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010)). This is a "recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Id.* (quotation marks omitted). Plaintiff asserts that Atwell took "an overly protective posture to a Caucasian supervisor, Jacob Smith," and claims that he therefore demonstrated disparate treatment. (Pl.'s Opp'n 12.)[8] In his Sur-reply, Plaintiff further states that there were two similarly situated comparators, William Wilson and Jacob Smith, who should be compared to himself and another Black employee over 40, Jaidan Gordon, and that they had the "[s]ame shift, [and] same metrics." (Sur-reply 10; *see also id.* at 11 (alleging that these "individuals were in similar roles, with identical performance metrics and schedules").) But Plaintiff's allegations are insufficient to make out such a claim here. Rather, Plaintiff must allege that he and his "selected

---

[8] Defendant challenges this allegation which, it says, was not concluded in Plaintiff's complaint. (Reply 7.) However, Plaintiff did include some information related to Smith in his exhibits which, as described, the Court considers here out of respect to Plaintiff's pro se status.

21

comparators were similarly situated in all material respects[,]" i.e. "subject to the same

workplace standards" and "engaged in conduct of comparable seriousness."  *Cooper*, 629 F.

Supp. 3d at 231 (quoting in part *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).

For instance, "allegations that the plaintiff and comparators worked in the same group and were

accountable to the same supervisors, but were subjected to disparate treatment may be sufficient

to raise an inference of discrimination."  *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495

(E.D.N.Y. 2016) (citation omitted).  However Plaintiff has not provided detailed enough

allegations as to Smith or Wilson such that either could be an adequate comparator.[9]  *See*

*Paupaw-Myrie*, 653 F. Supp. 3d at 100–01 (concluding comparator allegations were insufficient

where the plaintiff failed to "provide details regarding . . . alleged similarly situated" employees,

such as "what their positions or responsibilities were . . ., how their conduct compared to [the

---

[9] As mentioned above, Plaintiff's allegations as to Jacob Smith appear largely as an annotation on a performance review that he appended to his TAC.  (*See* TAC, Ex. A2a, at 9.)  In the review, Atwell criticized Plaintiff for purportedly behaving in a way that led to a "lapse in qualified personnel on the [facility's pallet] dock," which "forc[ed] Jacob to fulfill those roles."  (*Id.*)  Plaintiff, in a responsive annotation, asserts that this reflected an overly protective posture by Atwell to Smith who, he says, had a "supervisor" role and was given a gentler learning curve than Plaintiff.  (*Id.*)  These allegations are simply insufficient to sustain the conclusion either that Plaintiff and Smith were treated differently in terms of workload or otherwise.
More fundamentally, it does not permit the Court to conclude that that the two would be similarly situated such that they would be adequate comparators.  *See Smalls v. Amazon.com Servs. LLC*, No. 20-CV-5492, 2022 WL 356432, at *6 (E.D.N.Y. Feb. 7, 2022) (concluding allegations were not sufficient to raise an inference of discriminatory intent where the plaintiff claimed that "line workers (who were mostly minorities) received" certain inferior workplace protections compared "to those provided to managers (who were mostly white)," but failed to plead "facts suggesting that managerial employees and line workers were similarly situated in all material respects, despite their differing job responsibilities" (citation omitted)), *aff'd*, No. 22-615, 2022 WL 17491259 (2d Cir. Dec. 8, 2022) (summary order); *Richards v. Dep't of Educ.*, No. 21-CV-338, 2022 WL 329226, at *10–11 (S.D.N.Y. Feb. 2, 2022) (concluding that where the plaintiff alleged "similarly situated colleagues . . . had [no] difficulties in obtaining time off," and naming multiple employees of other races without providing "factual allegations establishing that these identified colleagues were treated more favorably than" the plaintiff, the complaint did not allege facts sufficient to suggest an inference of discriminatory motivation).

plaintiff's] . . . or how they were treated differently by [the] defendant[]" (alterations adopted) (citation and quotation marks omitted)).  He has not even alleged that Atwell supervised either of these individuals, nor has he alleged that they were in the same or even similar roles as Plaintiff. *See Satina v. City of New York*, No. 24-CV-1842, 2026 WL 480516, at *5 (S.D.N.Y. Feb. 20, 2026) (concluding that the plaintiff had cured earlier deficiencies as to her alleged comparators by identifying specific individuals with a "comparable job title, supervisory role, and similar responsibilities," and including details about the alleged similarity); *Kueh v. N.Y. & Presbyterian Hosp.*, No. 23-CV-666, 2024 WL 4882172, at *3 (S.D.N.Y. Nov. 25, 2024) (concluding the plaintiff had not alleged facts sufficient to support an inference of discrimination where the plaintiff did not "allege any specifics about the[] colleagues[,]" and explaining, "[a]bsent allegations that these individuals . . . held the same or substantially similar position as [the plaintiff], performed similar duties, and worked in the same location, the [c]omplaint fails to plausibly allege that these individuals are similarly situated in all material respects"); *Brown v. Waterbury Bd. of Educ.*, 247 F. Supp. 3d 196, 209 (D. Conn. 2017) (rejecting the argument that certain employees were "similarly situated" where they "had a different supervisor" than the plaintiff).[10]

Accordingly, Plaintiff's TAC does not allege disparate treatment under Title VII.

---

[10] To the extent that Plaintiff means to rely on his identification of a "generic class" of similarly situated employees who are Caucasian, such allegations are "insufficient even at the pleading stage" to support an inference of discrimination.  *Goodine v. Suffolk Cnty. Water Auth.*, No. 14-CV-4514, 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017); *see also Paupaw-Myrie*, 653 F. Supp. 3d at 99–100 (same and collecting cases).

2.  Disparate Impact Claim under Title VII

Plaintiff alleges a disparate impact claim under Title VII based on his race.  (TAC 15–17.)  A plaintiff may bring a disparate impact claim under Title VII where he can "demonstrate that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e–2(k)(1)(A)(i).  Where disparate impact is alleged, the plaintiff "bears the initial burden of making a prima facie showing of disparate impact."  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (alteration adopted) (citation and quotation marks omitted).  This requires the plaintiff to "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two."  *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (internal quotation marks and citations omitted); *see also Mandala*, 975 F.3d at 207 (same).  While a plaintiff is not required to present statistical evidence at the pleading stage, the plaintiff must allege "statistics [that] plausibly suggest that the challenged practice *actually* has a disparate impact."  *Mandala*, 975 F.3d at 209 (emphasis in original) (citation omitted).

In short, the plaintiff must "set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim."  *Id.*  The plaintiff is not required "'to prove in detail the methodological soundness of [his] statistical assessment' or to 'supplement the complaint's statistical analysis with corroborating evidence,' but [if the plaintiff relies on statistics] 'the statistics must plausibly suggest that the challenged practice actually has a disparate impact.'"  *Ndugga v. Bloomberg L.P.*, No. 20-CV-7464, 2023 WL 4744184, at *6 (S.D.N.Y. July 25, 2023) (alteration adopted) (quoting *Mandala*, 975 F.3d at 209–10).  "The statistical analysis must therefore, at minimum, 'focus on the disparity between appropriate

24

comparator groups' or 'reveal disparities between populations that are relevant to the claim plaintiffs seek to prove.'" *Loc. 2507, Unif. EMTs, Paramedics & Fire Inspectors v. City of New York ex rel. Fire Dep't of City of New York*, No. 22-CV-10336, 2024 WL 916520, at *8 (S.D.N.Y. Mar. 4, 2024) (alterations adopted) (quoting *Mandala*, 975 F.3d at 210).

Amazon moves to dismiss this claim on the basis that "Plaintiff appears to have invented purported 'statistical evidence' regarding the effect of Amazon PIVOT plans on African American employees," and correctly notes that Plaintiff "offers no explanation [of] where these statistics come from, to which populations they supposedly apply, or what 'analysis' he performed to reach his conclusions." (Def.'s Mem. 20.)[11]  But Amazon's argument is not properly asserted at the Motion to Dismiss stage.  As described above, at this stage Plaintiff is entitled to have his allegations taken as true.

Instead, the Court concludes that Plaintiff has adequately alleged a disparate impact claim based on the use of PIVOT Plans at Amazon.  Plaintiff has (1) identified a specific employment practice (*i.e.* the use of PIVOT Plans), (2) alleged that a disparity exists through asserted statistical differences in the outcome of those plans, (*see* TAC 16 ("70% of African American employees subjected to the plan faced termination or demotion, compared to only 30% of similarly situated white employees."); *see also* Sur-reply 10 ("Black managers = 20% of leadership but 60% of PIVOT placements." (emphases omitted))), and (3) claimed a causal relationship between the two because the Plans, he said, required "heightened performance standards" for African American employees, namely, "disproportionately high workloads and

---

[11] In his Opposition, Plaintiff claims that these ratios are "drawn from internal staffing rosters and PIVOT Plan logs expressly incorporated as Exhibit J." (Opp'n 13.)  But no such Exhibit J exists on the docket. (*See generally* Dkt.)

stringent deadlines" that "were not imposed on . . . white" employees who were similarly situated, (TAC 16).  These allegations clear the bar to survive a Motion to Dismiss pursuant to Rule 12(b)(6).  *See Ndugga*, 2023 WL 4744183, at *2 (concluding that the plaintiff adequately alleged a disparate impact claim where she included allegations that there was "an average pay disparity of 20%" between genders at "all levels" in the defendant's news bureau, assertedly resulting from decisions of the compensation committee, where the average pay disparity in the news industry was 10–15%); *Alfaro-Flecha v. ORC Int'l, Inc.*, No. 15-CV-1402, 2016 WL 67722, at *5–6 (S.D.N.Y. Jan. 5, 2016) (concluding that the complaint adequately alleged age discrimination based on asserted statistics, where the plaintiff alleged that company "implement[ed] a 'Reduction Plan' that disproportionately terminated older employees"); *Dekalb Cnty. v. HSBC N. Am. Holdings, Inc.*, No. 12-CV-3640, 2013 WL 7874104, at *14 (N.D. Ga. Sept. 25, 2013) (crediting, at motion to dismiss stage, allegations that loan practices led to a significantly greater percentage of protected minority borrowers ending up in higher-foreclosure risk census tracks); *cf. Ingenito v. Riri USA, Inc.*, No. 11-CV-2569, 2013 WL 752201, at *12 n.11 (E.D.N.Y. Feb. 27, 2013) (granting motion to dismiss where the plaintiff "pointed to no policy that had a discriminatory impact nor . . . provided any statistical evidence").

Accordingly, Amazon's Motion to Dismiss Plaintiff's Count II is denied.

### 3. Retaliation Claims

To plausibly plead a prima facie case of retaliation, a plaintiff must establish that: "(1) []he was engaged in protected activity, (2) the alleged retaliator knew that [the] plaintiff was involved in protected activity, (3) an adverse decision or course of action was taken against [the] plaintiff and (4) a causal connection exists between the protected activity and the adverse action." *Atherley v. N.Y.C. Dep't of Educ.*, No. 23-CV-383, 2024 WL 1345741, at *11

(S.D.N.Y. Mar. 29, 2024) (quotation marks and citation omitted); *see also Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (same).  Accordingly, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (citation omitted); *see also Crosby*, 695 F. Supp. 3d at 571–72 (same).  Crucially, "[a] plaintiff's burden at this prima facie stage is de minimis." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (italics omitted) (citation omitted); *see also Kirkland-Hudson*, 665 F. Supp. 3d at 459 (same).

### a.  Mixed Motive Retaliation Under Title VII

Plaintiff's third claim is an asserted mixed motive retaliation claim under Title VII.  (*See* TAC 17–19.)  However, the Supreme Court has expressly held that the "mixed motive" framework does not apply to retaliation claims under Title VII.  *See Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019) ("The [Supreme] Court [has] held that even though Title VII permits mixed-motive causation for claims based on the personal characteristics of race, color, religion, sex, or national origin (i.e., 'status-based' discrimination), it does not permit mixed-motive causation for retaliation-based claims." (italics omitted) (citation omitted)).  Indeed, the Court advised Plaintiff of this legal principle in its opinion addressing his Second Amended Complaint.  *See Ashmeade*, 2024 WL 4266391, at *13 n.19.  Accordingly, Plaintiff cannot raise a claim for retaliation based on a mixed motive standard.

Plaintiff's Count III is therefore dismissed.

### b. Retaliation under Title VII

Plaintiff raises a retaliation claim under Title VII.  (*See* TAC 19–21, 40–41.)  Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against any of his

27

employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a). In other words, "Title VII forbids an employer to retaliate against an employee for . . .complaining of employment discrimination prohibited by Title VII[.]" *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). Courts analyze claims for retaliation pursuant to Title VII under the familiar framework set forth by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*[.]" (collecting cases)). "Under the first step of the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of retaliation[.]" *Id.* at 844 (citation omitted). Once the plaintiff has done so, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Id.* at 845 (citation omitted). "The employee at all times bears the burden of persuasion to show retaliatory motive." *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014) (citation omitted). "As with other claims analyzed under the *McDonnell Douglas* framework, the allegations need only give plausible support to the reduced prima facie requirements." *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *20 (E.D.N.Y. Sept. 21, 2015) (alterations, quotation marks, and citation omitted), *aff'd*, 652 F. App'x 44 (2d Cir. 2016) (summary order).

To establish a prima facie case of retaliation, the plaintiff must show that: "(1) []he was engaged in an activity protected under Title VII; (2) [his] employer was aware of his participation in the protected activity; (3) the employer took adverse action against him; and (4) a causal connection existed between the protected activity and the adverse action." *Zann Kwan*, 737 F.3d at 850 (Parker, J., concurring in part) (citation omitted). "At the pleading stage, the

28

plaintiff's burden is even lower." *Sanders v. Zurich Am. Ins. Co.*, --- F. Supp. 3d. ----, 2026 WL 25582, at *3 (D. Conn. Jan. 5, 2026) (quotation marks and citation omitted). Under Second Circuit case law, the Plaintiff need not "plead even 'a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss.'" *Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 45 (D. Conn. 2023) (quoting *Vega*, 801 F.3d at 84). Accordingly, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (citation omitted). Put simply, "a plaintiff's burden at this . . . stage is de minimis." *Treglia*, 313 F.3d at 719 (italics omitted) (citation omitted).

Defendant moves to dismiss Plaintiff's Count IV, taking the view that he "has not pled that he engaged in protected activity." (Def.'s Mem. 22.) In the TAC, Plaintiff points to his "filing internal complaints about racial discrimination with Amazon's Human Resources department, reporting safety concerns to the Ethics Hotline and OSHA, and participating in [unspecified] EEOC investigations." (TAC 18.) He further alleges that Atwell made retaliatory comments after he made these complaints, describing him as "the worst manager in the building." (*Id.*) Amazon argues, however, that because Plaintiff has not alleged that his grievances pertained to unlawful discrimination, the filing of those complaints did not constitute protected activity. (Def.'s Mem. 22.) This argument is squarely at odds with Plaintiff's TAC, which alleges that Plaintiff "file[d] internal complaints about racial discrimination with Amazon's Human Resources department." (TAC 18.) "There is no question . . . that Plaintiff's reports[,]" even if they are internal to Amazon, "may qualify as protected activity." *Vaughn v. Empire City Casino at Yonkers Raceway*, No. 14-CV-10297, 2017 WL 3017503, at *21

29

(S.D.N.Y. July 14, 2017) (citation omitted); *see also Crosby*, 695 F. Supp. 3d at 572 (same).

Although Plaintiff apparently made other complaints that did not clearly relate to discrimination, (*see* TAC 8 (describing complaint about badgering and protocol violation); *id.* at 18 (noting that he "report[ed] safety concerns to the Ethics Hotline and OSHA, and participat[ed] in EEOC investigations")), these complaints do not erase his allegations that some complaints were, in fact, premised on racial discrimination,[12] *see Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 173–74 (E.D.N.Y. 2020) (differentiating between complaints unrelated to race or national origin, and "other grievances" that involved allegations of "harassment" and "disparaging" treatment, and were arguably protected by Title VII as a result).

So too, Plaintiff has satisfied the knowledge or awareness requirement, to the extent that it needs to be pled at this stage. "The 'knowledge' element is established at the prima facie stage if there is 'general corporate knowledge that the plaintiff has engaged in a protected activity.'" *Bamba v. U.S. Dep't of Homeland Sec.*, No. 22-CV-7407, 2024 WL 3924810, at *12 (quoting *Gordon*, 232 F.3d at 116). The Second Circuit has explained that, on a Motion to Dismiss under Rule 12(b)(6), the standard is even more relaxed than that required to state a *prima facie* case.

---

[12] Amazon cites *Marseille v. Mount Sinai Health Sys., Inc.*, No. 18-CV-12136, 2021 WL 3475620, at *13 (S.D.N.Y. Aug. 5, 2021), for the proposition that a plaintiff's belief he was subject to unfair treatment does not convert his complaints that are otherwise unrelated to discrimination into charges over discrimination. (*See* Def.'s Mem. 14.) While that proposition is true as a general matter, the court in *Marseille* concluded that a complaint was not, in fact, one "about unlawful discrimination" based on the actual text of the complaint before it in ruling on a summary judgment motion. Accordingly, this case is unhelpful in the context of the motion to dismiss stage.

Amazon's other cited authority, *Fattoruso v. Hilton Grand Vacations Co., LLC*, 525 F. App'x 26, 28 (2d Cir. 2013) (summary order), involved a complaint that was based on differential treatment of a male plaintiff's female coworker due to something other than a protected status (namely, a "paramour preference" for the woman, who was the supervisor's romantic partner). It is likewise unpersuasive.

*Littlejohn*, 795 F.3d at 307 ("Ultimately, the plaintiff will be required to prove that the employer-defendant acted with discriminatory motivation.  However, in the first phase of the case, the prima facie requirements are relaxed.").  Accordingly, courts have concluded that an email like Plaintiff's to an alleged corporate leader of the Defendant company, which expressly referenced allegations of racial discrimination, "gives rise to an inference of general corporate knowledge of the protected activity . . . ." *McConkey v. Churchill Sch. & Ctr.*, No. 24-CV-6091, 2025 WL 2062195, at *12 (S.D.N.Y. July 23, 2025); *see also Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3, 6 (2d Cir. 2014) (summary order) (explaining that, in order to satisfy this requirement, any complaint must include "some basis to conclude that the employer was aware that the plaintiff engaged in protected activity").

With respect to the causation element, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Vega*, 801 F.3d at 90 (citation omitted).  A plaintiff can demonstrate the causal connection in one of two ways: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon*, 232 F.3d at 117 (citation omitted); *see also Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 443 (S.D.N.Y. 2019) (same).

Under Title VII, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (citation omitted).  "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action"; instead, it requires only that absent the retaliatory motive, the adverse action would not have occurred.

31

*Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*, 801 F.3d at 90–91).  However, "the but-for causation standard does not alter the plaintiff's ability to demonstrate causation through temporal proximity."  *Vega*, 801 F.3d at 91 (alterations, quotation marks, and citation omitted).

Plaintiff appears to argue that "[t]he timing of [his placement on the PIVOT Plan, demotion, and eventual termination], coupled with retaliatory statements by his supervisor, supports" his claim. (*See* TAC 20–21.)[13]  In its memorandum, Defendant responds that "Plaintiff has not pled facts showing that his employment was terminated on account of his participation in any protected activity."  (Def.'s Mem. 23.)  Plaintiff responds simply that causation is satisfied based on alleged temporal proximity.  (Opp'n 15–16.)

The disjointed nature of Plaintiff's pleadings makes determining the timeline somewhat difficult, but the Court is able to discern the following allegations: on January 20, 2023, Plaintiff sent a message to Amazon employees about his relationship with Atwell.  (*See* TAC, Ex. E1, at 1.)  On February 10, 2023, Plaintiff sent a message to Atwell, copying other employees, urging her to make different managerial decisions.  (TAC, Ex. E2, at 1.)  On February 15, 2023, Plaintiff says he made his first complaint to HR.  (Opp'n 16; *see also* Sur-reply 11.)  Some time later that month, Plaintiff and Atwell had a performance review, the results of which Plaintiff strenuously contested.  (*See* TAC, Ex. A2 (agenda apparently dated February 16, 2023).)  According to a copy included in Plaintiff's filings, on March 27, 2023, the PIVOT Plan was

---

[13] As described, the only retaliatory statements he alleges by his supervisor are her purported statements that Plaintiff was the "worst manager" in the building, references to "fresh perspectives" and "younger talent," and purported assurances to Plaintiff's Caucasian coworkers that, "if I did not like you, you would know.'"  (FAC 11, 30–31.)

imposed on Plaintiff.  (TAC, Ex. F1; Sur-reply 10; *but see* Sur-reply 11 (stating "PIVOT plan ultimatum issued" on March 5, 2023).)

On March 31, 2023, Plaintiff sent an email (though the recipient field is not included on the copy produced to the Court), wherein he charges that Atwell engaged in racial and age discrimination.  (*See* FAC, Ex. E3, at 3.)  He forwarded this message to other Amazon employees on April 3, 2023; one of those employees responded thanking Plaintiff for his email and seeking to call Plaintiff that same day.  (*Id.* at 1.)  By May 9, 2023, Plaintiff's employment with Amazon "was involuntarily terminated."  (TAC 1.)

Read generously, and in combination with Plaintiff's allegation that he "fil[ed] internal complaints with Amazon's HR department regarding racial discrimination," (TAC 20), (as well as his statement in his March 31, 2023 email that he had prior raised his concerns regarding Atwell), (TAC, Ex. E3, at 3), Plaintiff has plausibly alleged a retaliation claim.  At a minimum, Plaintiff alleges that on March 31, 2023, he complained about Atwell engaging in racial discrimination, and that he was terminated fewer than two months later.  (*See id.* at 3; TAC 1; *see also* Sur-reply 11–12 (describing various complaints in February and March 2023, before Plaintiff was terminated on May 9, 2023).)  Although there is no "bright line" for temporal causation, it is clear that a gap that is shorter than two-to-three months between a protected activity (in this case, making the complaint) and an adverse employment action (in this case, Plaintiff's allegedly being "involuntarily terminated"), permits a causal inference.  *See, e.g.*, *Kramer v. Bessent*, No. 21-CV-3295, 2025 WL 2576482, at *30 (E.D.N.Y. Sept. 4, 2025) (noting Second Circuit decisions concluding that gaps of two-to-three months, or even six months, sufficed to support a causal inference).  This causal inference is strengthened by Plaintiff's allegations that Atwell had undertaken a campaign of harassment against him.  *See*

*Dawson v. Beebe*, No. 24-CV-1548, 2025 WL 2402289, at \*8 (S.D.N.Y. Aug. 19, 2025)
(concluding, in case involving the plaintiff's filing a "formal internal complaint" about a
coworker, that "in light of the allegation that [retaliatory conduct] was the result of [the
defendant's] campaign of fomenting distrust of [the] [p]laintiff, the three-month period between
[the p]laintiff's filing of the complaint and this retaliatory conduct is sufficiently close in time
such that [the p]laintiff adequately alleges causation").
Accordingly, the Motion to Dismiss Count IV is denied.

    4.  <u>Hostile Work Environment under Title VII and NYSHRL</u>

In Count V, Plaintiff asserts a claim he describes as "abuse of authority."  (TAC 21–23.)
The Court construes this claim as a hostile work environment claim brought under Title VII and
the New York State Human Rights Law ("NYSHRL").  (*See id.* at 21 ("Title VII of the Civil
Rights Act and the New York State Human Rights Law . . . prohibit employers from creating a
hostile work environment or engaging in abusive practices . . . .").)  The Court therefore analyzes
it together with Plaintiff's Count XV, which is described as a "Hostile Work Environment"
claim.  (*Id.* at 38.)

Title VII and the NYSHRL both prohibit employers from subjecting employees to a
hostile work environment.  *See Littlejohn*, 795 F.3d at 320 (explaining that "[t]he phrase terms,
conditions, or privileges of employment [in Title VII] evinces a congressional intent to strike at
the entire spectrum of disparate treatment, which includes requiring people to work in a
discriminatorily hostile or abusive environment" (alteration omitted) (quoting *Redd v. N.Y. Div.
of Parole*, 678 F.3d 166, 175 (2d Cir. 2012)); *see also* N.Y. Exec. L. § 296(1)(a) (proscribing "an
employer . . . because of an individual's age, race, creed, color, . . . [or] familial status, . . . to
discharge from employment such individual or to discriminate against such individual in

34

compensation or in terms, conditions or privileges of employment"). Claims under both statutes are judged under the same standard. *See Zheng-Smith v. Nassau Health Care Corp.*, 486 F. Supp. 3d 611, 623 (E.D.N.Y. Sept. 14, 2020) ("As with discrimination, analyses of hostile work environment claims under federal and New York law are coextensive."); *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 334 (S.D.N.Y. 2020) ("Hostile work environment claims under Title VII and the NYSHRL are judged by the same standard." (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013)) (footnote omitted)).

"A hostile work environment claim requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id.* (citing *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001)). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (quoting *Perry*, 115 F.3d at 149). Moreover, "[i]t is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected

35

characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citation omitted); *see also Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("In other words, an environment which is equally harsh for both men and women or for both young and old does not constitute a hostile working environment under the civil rights statutes." (citation omitted)).  And in making this determination, "the courts have consistently emphasized that the ultimate issue is the reasons for the individual plaintiff's treatment, not the relative treatment of different groups within the workplace." *Brown*, 257 F.3d at 252 (citation omitted).

In support of his hostile work environment claim, Plaintiff again points to Atwell's actions, claiming that she subjected him to "excessive scrutiny, punitive actions, and demeaning public remarks" as well as "workloads far exceeding those of similarly situated white colleagues," including through the "PIVOT PLAN with unattainable expectations."  (TAC 22.) Plaintiff also asserts that she established a hostile work environment when she described him as the "worst manager in the building."  (*Id.*)

Although most of these allegations are facially neutral, Plaintiff "has alleged that he was assigned a disproportionate workload because of his race."  *Sanderson v. Leg Apparel LLC*, No. 19-CV-08423, 2020 WL 3100256, at *8 (S.D.N.Y. June 11, 2020).  "Allegations of a heavier workload alone can support a viable hostile work environment claim if the plaintiff was subjected to disproportionately burdensome work assignments."  *Kirkland-Hudson*, 665 F. Supp. 3d at 466 (quotation marks omitted and alteration adopted); *Rys v. Davis*, No. 22-CV-10758, 2025 WL 896844, at *9 (S.D.N.Y. Mar. 24, 2025) (same); *see also Sanderson*, 2020 WL 3100256, at *8 ("Most importantly, [the plaintiff] has alleged that he was assigned a disproportionate workload because of his race.").  At the pleading stage, Plaintiff is entitled to the reasonable inference that a workload "five times" that of Caucasian coworkers, with

36

"significantly less time and support," (TAC 11), constitute "disproportionately burdensome work assignments," that can support a viable hostile work environment claim. *Kirkland-Hudson*, 665 F. Supp. 3d at 466. While Plaintiff's other allegations are facially neutral, the unbalanced workloads provides "some basis for inferring" that the "incidents race-neutral on their face were in fact discriminatory," as required to survive a Rule 12(b)(6) Motion to Dismiss. *Lawson v. City of New York*, No. 10-CV-5238, 2013 WL 6157175, at *14 (E.D.N.Y. Nov. 22, 2013) (citation omitted), *aff'd*, 595 F. App'x 89 (2d Cir. 2015) (summary order).[14] "That [P]laintiff has raised only a minimal inference of discriminatory motive and may have difficulty making the requisite showing on the merits, . . . are arguments for summary judgment, not dismissal." *Byvalets v. N.Y.C. Hous. Auth.*, No. 16-CV-6785, 2017 WL 7793638, at *14 (E.D.N.Y. July 28, 2017), *report and recommendation adopted*, 2018 WL 1067732 (E.D.N.Y. Feb. 23, 2018).

Further, courts appear to conclude that, where a plaintiff has alleged that they were assigned disproportionately heavy workloads based on race, they have likewise demonstrated the severity required to state a hostile work environment claim at the pleading stage. *See Wilson v. Yonkers Pub. Schs.*, No. 24-CV-184, 2025 WL 2689081, at *9 (S.D.N.Y. Sept. 19, 2025) ("[The p]laintiff sufficiently pleads that he was subject to a disproportionate workload on the basis of his race . . . . These allegations by [the p]laintiff are sufficient to plead objectively severe or pervasive conduct to maintain his hostile work environment [claim]."); *Dent v. N.Y.C. Dep't of Educ.*, No. 22-CV-5357, 2024 WL 3362211, at *13 (E.D.N.Y. Mar. 1, 2024) ("[C]laims of a heavier workload, along with disproportionately burdensome assignments, have been held

---

[14] In reply, Plaintiff alleges that his shifts were "repeatedly 'accidentally' rescheduled to conflict with his child-care obligations," (Reply 17), but this allegation does not bear on his Title VII or NYSHRL claims.

sufficient to state a claim." (citation omitted)); *Cherry v. N.Y.C. Hous. Auth.*, 564 F. Supp. 3d 140, 184 (E.D.N.Y. 2021) (holding triable issue of fact existed as to hostile work environment when the plaintiff testified that the defendant assigned him a disproportionately heavy workload and required the plaintiff to work overtime hours while denying overtime compensation because he was a man).  Indeed, courts have determined those elements satisfied, where, as here, a plaintiff alleges that he was "assigned a disproportionate workload . . . and was subject to unfair discipline . . . both on account of [his] race." *Kirkland-Hudson*, 665 F. Supp. 3d at 466 (holding that the plaintiff satisfied the pleading requirements where she "allege[d] she was assigned a disproportionate workload . . . and was subject to unfair discipline . . . both on account of her race").  Such allegations are strengthened where, as here, they are paired with allegations of other relatively small slights that reflect differential treatment based on race, such as "white colleagues receiving praise for their work,"—even though "[s]tanding alone" those facts "might fail to plead . . . an objectively hostile work environment." *Sanderson*, 2020 WL 3100256, at *8; *see also Hougham v. Trs. of Ithaca Coll.*, No. 25-CV-529, 2026 WL 555476, at *8 (N.D.N.Y. Feb. 27, 2026) ("[The plaintiff] alleges that he was . . . subjected to disproportionate workloads . . . and higher performance standards [among other things] because of his [protected status]—in addition to other unfair treatment that, while facially neutral and not actionable as a disparate-treatment claim per se, supplements his allegations." (alternation adopted) (quotation marks and citation omitted)).[15]

---

[15] Defendant has advanced no argument that the acts described in the TAC cannot be imputed to it, and so the Court has not considered this requirement.

Accordingly, the Court concludes that Plaintiff has adequately alleged a hostile work environment claim in violation of Title VII and New York State law.  Defendant's request to dismiss counts V and XV is denied.

### 5. ADEA

Turning to Plaintiff's ADEA claim, Count VI, Amazon contends that—on the merits—Plaintiff has failed to state a plausible claim for age discrimination.  (*See* Def's Mem. 21.)  Given that Plaintiff is proceeding pro se, the Court construes his allegations liberally as raising an ADEA claim based on both a disparate-treatment and a disparate-impact theory.  *See Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 88 (2008) (explaining that disparate-treatment claims concern "discriminatory intent" and disparate-impact claims concern "discriminatory result").

#### a.  Disparate Treatment

"The ADEA protects employees over [forty] years of age from age discrimination in employment." *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 157 (S.D.N.Y. 2022) (citing 29 U.S.C. § 631(a)).  "In order to establish a prima facie case of age discrimination in violation of the ADEA, a plaintiff must show: (1) that he was within the protected age group (more than [forty] years old); (2) that he was qualified for his position; (3) that he experienced adverse employment action; and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Kaba v. Hope Home Care*, No. 23-CV-9512, 2024 WL 1679327, at *3 (E.D.N.Y. Apr. 18, 2024) (citing *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)); *see also Santiago*, 634 F. Supp. 3d at 157 (same).  Crucially, for ADEA claims, a plaintiff must show that the discriminatory motive "was a but[-]for cause" of the adverse employment action, as opposed to just a factor in the decision. *McCormack v. IBM*, 145

F. Supp. 3d 258, 266 (S.D.N.Y. 2015) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173 (2009)). To establish causation under that standard, "the plaintiff must plead facts suggesting 'that age was the reason that the employer decided to act.'" *Santiago*, 634 F. Supp. 3d at 157 (quoting *Gross*, 557 U.S. at 176). In other words, as noted above, "'but-for' causation does not require proof that [discrimination] was the only cause of the employer's action, but [rather] that the adverse action would not have occurred in the absence of the [discriminatory] motive." *Id.* (emphasis added) (citing *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 n.5 (2d Cir. 2013)).

Defendant does not challenge that Plaintiff was within the protected age group or that he was qualified for his position. (*See generally* Def.'s Mem.; Reply Br.) Accordingly, the Court considers whether Plaintiff has alleged that he experienced an adverse employment action related to his age. Plaintiff explains that a supervisor—Atwell—told him that his team "needed fresh energy" before he was "removed from critical projects and effectively replaced by a team member in their twenties." (Sur-reply 14.) Further, he says that at some unspecified time, his requests "for updated software" and "coaching tools" were denied, although identical requests by a "28-year-old supervisor were approved" expeditiously. (*Id.*)

As to the fourth element, "[t]here are a variety of ways in which a plaintiff can demonstrate that the adverse employment action took place under circumstances giving rise to an inference of age discrimination." *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301 (S.D.N.Y. 2015) (quoting *Del Valle v. City of New York,* No. 11-CV-8148, 2013 WL 444763, at *4 (S.D.N.Y. Feb. 6, 2013)). For example, an inference of age discrimination may be raised where a plaintiff "alleges that [he or] she was within the protected class, that [he or] she was rejected for a position, and that the position was filled by a person significantly younger than

40

[him or] her." *Munoz-Nagel v. Guess, Inc.,* No. 12-CV-1312, 2013 WL 1809772, at *7

(S.D.N.Y. Apr. 30, 2013) (collecting cases).  "An age discrimination plaintiff may also seek to

rely on . . . comments or remarks evidencing ageist views, evidence that similarly situated

younger employees are treated more favorably than older ones, or statistical evidence

demonstrating a pattern of adverse employment actions taken against older employees." *Del*

*Valle,* 2013 WL 444763, at *4 (citations omitted).

Once again, the Court concludes that Plaintiff has failed to allege that his age was a but-

for cause of any adverse employment action.  *See Ashmeade*, 2024 WL 4266391, at *14.  As the

Court has already explained,

> [Plaintiff] "does not allege that anyone ever commented on his age or insinuated
> that he was too old to perform his job." *Ahmad v. White Plains City Sch. Dist.*, No.
> 18-CV-3416, 2019 WL 3202747, at *6 (S.D.N.Y. July 16, 2019).  Rather, he raises
> only the type of vague, threadbare, and wholly speculative allegations that motions
> to dismiss are meant to weed out.  *See Iqbal*, 556 U.S. at 662 (explaining that "a
> complaint [does not] suffice if it tenders naked assertions devoid of further factual
> enhancement.")  That simply will not suffice to survive Amazon's Motion, as
> Plaintiff fails to plead sufficient facts to permit the Court "to infer more than the
> mere possibility of misconduct." *See id.* at 679.

*Id.*  In an attempt to address this deficiency, Plaintiff relies on three allegations to establish

causation: the comment that his team "needed fresh energy," an assertion that he was denied

certain requests for software while a 28-year-old individual received approvals for that software,

and his being "removed from critical projects and effectively replaced" by an unspecified

individual in their twenties.  (Sur-reply 14; Opp'n 14; *see also* TAC 30–31.)  But these

allegations—which Plaintiff makes in the most threadbare fashion—do not satisfy his burden

under Rule 12(b)(6).

In cases where plaintiffs are fired and replaced by younger individuals, "the allegation a

plaintiff was replaced by a younger employee, without more, fails to state a claim for relief."

41

*Soriero v. Battery Park City Auth.*, No. 18-CV-1334, 2019 WL 13271768, at *3 (E.D.N.Y. May 20, 2019) (collecting cases). In his TAC and memoranda of law, Plaintiff has offered no "facts beyond mere conclusions" that he was replaced by a younger employee: he says only he was "removed from critical projects and *effectively* replaced"—not even *actually* replaced—by a younger coworker at some unspecified time. (Opp'n 14; *see also* Sur-reply 11.) These allegations are insufficient. *See Ashmeade*, 2024 WL 4266391, at *14 (holding "an allegation that plaintiff was replaced by a younger employee is not sufficient, without more, to survive a motion to dismiss" (quotation marks and citation omitted) (collecting cases)); *Murillo-Roman v. Pension Bds. - United Church of Christ*, No. 22-CV-8365, 2024 WL 246018, at *12 (S.D.N.Y. Jan. 23, 2024) ("That two younger employees were hired to perform some of [the plaintiff's] tasks is not enough by itself to establish an inference that [the p]laintiff's age was a but-for cause of her termination." (citation omitted)); *Ndremizara*, 93 F. Supp. 3d at 316 (explaining that the plaintiff failed to allege that the defendant "filled the . . . position with a person significantly younger . . . than [the p]laintiff" where the plaintiff "merely asserts" that he discovered candidates selected were "younger and less qualified"). An assertion that, like this one, is entirely conclusory, "naked," and "devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted), is "not entitled to a presumption of truth," *Thayil v. Fox Corp.,* No. 11-CV-4791, 2012 WL 364034, at *5 (S.D.N.Y. Feb. 2, 2012) (footnote omitted). Plaintiff has failed to provide information about "the[] supposed employee[]" such as this person's "experience, age, or qualifications . . . or whether Defendant knew [the employee's] age[,]" *Ndremizara*, 93 F. Supp. 3d at 316, except that this person was a "twenty-something," (Sur-reply 14). "This general and unsubstantiated claim therefore requires dismissal[.]" *Ndremizara*, 93 F. Supp. 3d at 316; *see similarly Bernstein v. N.Y.C. Dep't of Educ.*, No. 19-CV-

42

11816, 2021 WL 4429318, at *9 (S.D.N.Y. Sept. 27, 2021) (concluding that allegations of discriminatory motive based on age were undermined where the plaintiff failed to "identify comparators for . . . 'older' employees who were 'removed from their positions,' which would create an inference that the reasons for the removal was on the basis of age and not on the basis of some other genuine and non-pretextual reason") *aff'd*, No. 21-2670, 2022 WL 1739609 (2d Cir. May 31, 2022) (summary order).[16]

As to the comment that Atwell said Plaintiff's team needed "fresh energy," (Opp'n 14), the Court concludes that this, too, is insufficient.  Courts have "generally held" that remarks related to "energy level" do not, without more, reflect age-related animus.  *Koestner v. Derby Cellular Prods.*, 518 F. Supp. 2d 397, 401 (D. Conn. 2007) (quotation marks and citation omitted).  Accordingly, they do not give rise to a reasonable inference of discrimination on their own.  *Carter v. Verizon*, No. 13-CV-7579, 2015 WL 247344, at *6 (S.D.N.Y. Jan. 20, 2015) (finding, on motion to dismiss pursuant to Rule 12(b)(6), that reference to "new blood" did not raise inference of discrimination without more, on the basis that it "would be rank speculation to infer that the comment had anything to do with [the p]laintiff's age, since it could just as easily refer to bringing new members into a group, regardless of age, for a fresh perspective"); *De la Cruz v. City of New York*, 783 F. Supp. 2d 622, 643 (S.D.N.Y. 2011) (concluding comment referring to needing "new blood" on a team could not support inference of age discrimination); *Koestner*, 518 F. Supp. 2d at 401 (reasoning an alleged comment that the plaintiff "was not

---

[16] Plaintiff attempts to identify a comparator—claiming that his "requests for updated software and coaching tools were denied without explanation" while "identical requests by a 28-year-old supervisor were approved within 48 hours," (Opp'n 14), but he has again failed to allege facts sufficient to support the conclusion that this "supervisor" was similarly-situated to him in all material respects, let alone that the denial of "updated software" is, in fact, an adverse employment action.

energetic enough" did not raise an inference of age discrimination); *accord Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) (statements like needing "new blood" or looking for an employee with a "lot of energy," standing alone, do not raise an inference of age discrimination). While these comments are sometimes actionable when made by a decision maker in connection with an employment decision, Plaintiff has not alleged facts that would support the conclusion that such a connection was present here. *Stampfel v. City of New York*, 2005 WL 3543696, at *5 (S.D.N.Y. Dec. 27, 2005). As to the assertion that there were "management comments suggesting a preference for 'younger talent,'" (TAC 32–33), Plaintiff does not describe the contents of these "comments," who said them, to whom, in what context, how often, or even that they were related to him at all, (*see id.*). *See Ramos v. Palm W. Corp.*, No. 23-CV-9441, 2024 WL 3228449, at *3 (S.D.N.Y. June 27, 2024) (holding that [the p]laintiff's allegations fail to satisfy [the] even more lenient requirements" of a state discrimination law, which has a more forgiving causation standard than Title VII, where the plaintiff's "only allegation even remotely pertaining to age discrimination is that [the individual defendants] called him names such as 'old man' and 'dinosaur' and 'asked when he was going to retire,'" but did not allege "when or in what context these comments were made" nor "connect the [comments] to his allegations of inferior treatment and materially adverse employment actions"); *Howe v. Town of Hempstead*, No. 04-CV-656, 2006 WL 3095819, at *8 (E.D.N.Y. Oct. 30, 2006) ("[The p]laintiff does not specify who made the comments, when the comments took place, their context, or whether they had any relation to the decision not to promote [the p]laintiff. Therefore, [the p]laintiff has not shown these racist remarks to be anything more than stray remarks and they do not create an inference of discrimination.").

44

Even assuming that the "fresh energy" comment was age related—despite the lack of an explicit reference to age—it would not support the requisite discriminatory inference as alleged here. The Second Circuit has explained that "[s]tray age-related remarks are insufficient to raise an inference of discriminatory motive unless they (1) were made repeatedly, (2) drew a direct link between discriminatory stereotypes and the adverse employment decision, and (3) were made by supervisors who played a substantial role in the [employment] decision." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (quotation marks and citation omitted). "Where remarks are made by" a decisionmaker and "they could reasonably be construed as explaining why [the adverse employment] decision was made, they are not appropriately characterized as 'stray.'" *Wesolowski v. Polish Cmty. Ctr. of Buffalo, Inc.*, No. 21-CV-751, 2022 WL 6784611, at *4 (W.D.N.Y. Aug. 12, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 6817953 (W.D.N.Y. Oct. 7, 2022).

Here, Plaintiff includes specific allegations of single comment by Atwell, which was made on February 10, 2023—some unspecified period of time prior to Plaintiff being "denied . . . access to new tools" and his projects being "reassigned" or "effectively" reassigned to the unspecified younger employees such that he was "effectively replaced." (Opp'n 14; Sur-reply 10–11; *see also* TAC 30–31.) In other words, they were not made repeatedly nor can they reasonably be construed as explaining why Plaintiff's projects were reassigned or he was denied access to tools. *See Wesolowski*, 2022 WL 6784611, at *4 (remarks are not "stray" when they can be reasonably construed as explaining why an adverse employment decision was made). These types of deficiencies preclude an inference of discrimination based on the facts described in the TAC. *See Browne v. Arrow Sec.*, No. 24-CV-9788, 2025 WL 2592353, at *5 (S.D.N.Y. Sept. 8, 2025) (concluding that the pro se plaintiff did not adequately allege causation sufficient

to support age discrimination claims under the ADEA or state statutes with more-favorable

causation standards, where the plaintiff attempted to demonstrate causation based on a "stray

remark" that was "not sufficient to plead that [the d]efendant treated [the p]laintiff differently

from other employees, at least in part *because of her age*" (emphasis in original) (citation

omitted)); *Baez v. Amazon.com Servs., LLC*, 659 F. Supp. 3d 339, 353–54 (E.D.N.Y. 2023)

(explaining that allegations are insufficient to support causation where they involve stray

comments, "in a context completely unrelated to [a plaintiff's] ultimate termination," and

holding allegations of a comment "that 'it would be difficult' for [the] [p]laintiff to be accepted

to the . . . position 'because managers prefer to move up to positions . . .  young people who

speak perfect English'" did not state a claim); *Thomas v. Town of Southeast*, 336 F. Supp. 3d

317, 328 (S.D.N.Y. 2018) (granting summary judgment on ADEA retaliation claim that was

premised exclusively on the fact that promotions were given to older applicants, an individual

called him "a young mistaken boy," and the fact that he was the employer's youngest employee);

*Burroughs v. Chase Manhattan Bank, N.A.*, No. 01-CV-1929, 2005 WL 497790, at *2 (S.D.N.Y.

Mar. 2, 2005) ("[O]ne comment . . . is insufficient to establish a prima facie claim of age

discrimination." (citation omitted)).[17]

---

[17] In the alternative, the Court would conclude that—even assuming that this comment was connected to the shifting of work assignments to a "younger employee"—Plaintiff has not alleged facts sufficient to support the conclusion that this shift was an adverse employment action.  Unlike his allegations related to the PIP, described above, Plaintiff has not identified "some harm" stemming from this shift.  *Muldrow*, 601 U.S. at 355.  As described, the alleged adverse employment action must have left the plaintiff "worse off, but need not have left [him] significantly so."  *Id.* at 359.  *See also John*,  2025 WL 317515, at *4–5 (E.D.N.Y. Jan. 28, 2025) (applying *Muldrow* standard to a claim under the ADEA); *Back*, 2024 WL 4746263, at *2 (explaining that the plaintiff must demonstrate "*some* harm respecting an identifiable term or condition of employment" (quotation marks and citation omitted) (emphasis in original)). Plaintiff has alleged that he was "effectively replaced" from "high visibility" projects.  (Sur-reply

b. Disparate Impact

The ADEA too permits a claim based on disparate impact, as it prohibits employers from "limit[ing], segregat[ing], or classify[ing its] employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."  29 U.S.C. § 623(a)(2), *see also Doheny v. Int'l Bus. Machs., Corp.*, 714 F. Supp. 3d 342, 360 (S.D.N.Y. 2024) (noting that a plaintiff may proceed on a theory of "a collective disparate-treatment claim for age discrimination under a 'pattern-or-practice' theory of liability" (emphasis omitted) (collecting cases)).  To plead an ADEA claim under a disparate-impact theory, a plaintiff's complaint must include allegations that plausibly "(1) identify a specific, neutral employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two."  *Id.* at 364 (alterations adopted) (quoting *Mandala*, 975 F.3d at 207).

So far as the Court can tell, Plaintiff has not alleged the existence of a specific, neutral employment practice or policy.  Plaintiff identifies some comments by supervisors, as well as an assertion that he was replaced on projects by younger team members, and that his "requests for updated software and coaching tools were denied without explanation," but "identical requests by a 28-year-old supervisor were approved within 48 hours."  (Opp'n 14; *see also* Sur-reply 10

---

14; *see also* TAC 30–31.)  But he has not explained what harm resulted from that asserted transfer.

The Court also notes that, in his opposition, Plaintiff says that he has included "[s]creenshots of group messages in which supervisor[s] mock Plaintiff's 'age' or character, discuss limiting his resources and celebrate the actions and impact of PIVOT Plan's 'shock value.'"  (Opp'n 9.)  Plaintiff has not included these screenshots in the attachments to his TAC.  (*See* TAC.)  The Court concludes that this is a "naked assertion" that lacks further "factual enhancement," meaning it is conclusory and the Court does not credit it.  *Iqbal*, 556 U.S. at 678 (alteration, citation, and quotation marks omitted).

("Atwell told Plaintiff . . . the team 'needed fresh energy' before stripping him of high-visibility projects and assigning them to a twenty-something subordinate").)  These allegations do not satisfy the "the requirement to provide a 'specific employment practice'"; that requirement "exists, at least in part, 'to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Walker v. Accenture PLC*, 511 F. Supp. 3d 169, 195–96 (D. Conn. 2020) (quoting *Kulkarni v. City of New York*, No. 01-CV-10628, 2002 WL 1315596, at *2 (S.D.N.Y. June 14, 2002)).  That is because Plaintiff's allegations identify no *policy* at all, let alone a facially neutral one, that gives rise to these disparate outcomes.  In other words, "[e]ven if the court were to take [P]laintiff's conclusory allegations at face value, what [P]laintiff seeks to assert is intentional discrimination, not a facially neutral practice as required to sustain a disparate impact claim."  *Bryant v. Greater New Haven Transit Dist.*, No. 12-CV-71, 2014 WL 2993754, at *10 (D. Conn. July 2, 2014) (citation omitted); *see also id.* (noting that "a disparate impact claim requires [the] plaintiff to identify a policy that is facially neutral" (citation omitted).  Plaintiff's claim fails for the additional reason that, "even accepting [his] theory of disparate impact," and putting to the side the fact that "[he] fails to identify a challenged practice or policy of [Amazon]," he further does not "connect the alleged disparity to any such practice or policy."  *Shih v. Broadway League*, No. 23-CV-8035, 2025 WL 1890608, at *2 (S.D.N.Y. July 8, 2025).  This claim, too, must therefore be dismissed.

### 6. Negligence

In Count VII, Plaintiff asserts a negligence claim.  (TAC 25.)  In response, Amazon renews its argument that the claim is barred by Workers' Compensation exclusivity.  (Def.'s Mem. 25.)  For substantially the same reasons described in the Court's earlier opinion, *see Ashmeade*, 2024 WL 4266391, at *17, the Court agrees.

48

"Under New York law, common law negligence claims arising from workplace injuries are precluded by New York Workers' Compensation Law, which provides the exclusive remedy for negligence claims against an employer." *Lin v. Amazon.com, Inc.*, No. 21-CV-6203, 2023 WL 5720063, at *3 (E.D.N.Y. Sept. 5, 2023) (quotation marks and citation omitted). And even construing the TAC liberally, Plaintiff has not pled any facts suggesting that he could sustain a claim under the intentional tort exception to this general rule. *See id.* at *3 ("To sufficiently plead the exception, there must be alleged an intentional or deliberate act by the employer directed at causing harm to the particular employee." (quotation marks and citation omitted)). (*See generally* TAC.) To the extent that, in his Sur-reply, Plaintiff alleges that he was ordered to lift pallets "despite a documented back injury," he does not provide sufficient allegations to conclude that the individuals who gave him this directive, whoever they were, intentionally or deliberately acted in order to cause harm to him. (*See* Pl.'s Sur-reply 13.)

Plaintiff's negligence claim, raised as Claim VII in the TAC, is therefore dismissed.

### 7. IIED

Count XIII raises a claim for intentional infliction of emotional distress ("IIED") under New York law. (TAC 35–37.) Plaintiff asserts that Atwell's "repeated public reprimands," excessive workloads under the PIVOT Plan, "retaliatory actions," and remarks stating that the was the "worst manager in the building," are the type of extreme and outrageous conduct that is actionable in tort. (*Id.* at 35–36.) In his opposition, Plaintiff further points to his claim that Atwell "broadcast[] demeaning messages over the radio" and created false disciplinary reports directed at him. (Opp'n 20.) In his Sur-reply, Plaintiff further asserts that he was threatened with "career obliteration" and sustained "documented anxiety" that led him to pursue therapy. (Pl.'s Sur-reply 14.) Amazon challenges Plaintiff's IIED claim on the basis that, in its view,

49

"workplace discipline, even if allegedly discriminatory, does not amount to extreme and outrageous conduct under New York law" and because an "IIED claim . . . based on allegations of workplace discrimination . . . are not 'extreme and outrageous' as a matter of law." (Def.'s Mem. 28.)

"The state-law tort of [IIED] has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *23 (S.D.N.Y. Mar. 30, 2018) (quotation marks omitted) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)); *see also Panchishak v. Cnty. of Rockland*, No. 20-CV-10095, 2021 WL 4429840, at *8 (S.D.N.Y. Sept. 27, 2021) (same). "New York courts have imposed a very high threshold for [IIED] claims, requiring that the conduct must be so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *33 (S.D.N.Y. Sept. 29, 2023) (quotation marks omitted) (quoting *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005)); *see also Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1178 (N.Y. 2016) (similar).

"The Second Circuit has suggested that sufficient . . . outrageous behavior could be 'some combination' of alleged 'public humiliation, . . . verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy' with false accusations of criminal conduct." *Truman v. Brown*, 434 F. Supp. 3d 100, 120 (S.D.N.Y. 2020) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 828–29 (2d Cir. 1999)); *see also Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 180 (E.D.N.Y. 2017) (same). "Courts are [therefore] generally loath to find that conduct involving discrimination or harassment in the course of

50

employment is sufficient for a claim of IIED." *Padilla v. Sacks & Sacks, LLP*, No. 19-CV-10021, 2020 WL 5370799, at *2 (S.D.N.Y. Sept. 8, 2020).  Thus, "[i]n the rare instances where the New York courts have found the complaint sufficient to state a claim for [IIED] in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery." *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 656 (S.D.N.Y. 2015) (quotation marks and citation omitted) (collecting cases).  Alleging sufficiently "outrageous" conduct is thus a very high bar.  *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 375 (S.D.N.Y. 2016) ("[E]ven a false charge of sexual harassment does not rise to the level of outrage required under New York law." (quotation marks and citation omitted)).

"The determination [of] whether the requisite outrageousness has been established is, in the first instance, an issue of law for the courts." *Cavallaro v. Pozzi*, 814 N.Y.S.2d 462, 465 (App. Div. 2006) (citation omitted).  And here, Plaintiff has failed to plausibly allege extreme and outrageous conduct.  As described, in his TAC, Plaintiff aims to state an IIED claim by pointing to Amazon's conduct, including the decision to place Plaintiff on a PIVOT Plan and the allegedly disparaging remarks by Atwell.  (TAC 36.)

As the Court explained in its last Opinion, allegations of this nature are insufficient to state an IIED claim:

> Plaintiff's allegations simply do not suffice, however, because "[a]cts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain an [IIED] claim because such conduct is not sufficiently outrageous." *Blanco v. Success Acad. Charter Sch., Inc.*, No. 23-CV-1652, 2024 WL 3427076, at *4 (S.D.N.Y. July 16, 2024) (quotation marks omitted); *accord Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) (same); *see also Rodgers-King v. Candy Digit. Inc.*, No. 23-CV-2591, 2024 WL 382092, at *9 (S.D.N.Y. Feb. 1, 2024) (concluding that the plaintiff had not alleged extreme and outrageous conduct where he asserted that the defendant "deceived him about his role and discriminated against him by excluding him from key business discussions, preventing him from obtaining the necessary resources, failing to promote him, and

51

[ultimately] terminating him"); *Ibraheem v. Wackenhut Servs., Inc.*, 29 F. Supp. 3d 196, 215 (E.D.N.Y. 2014) ("Generally, ordinary workplace disputes, including . . . discrimination, harassment, and hostile work environment claims . . . , do not rise to the level of extreme and outrageous conduct necessary to support a claim of IIED."); *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, No. 00-CV-5433, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001) (dismissing the plaintiff's IIED claim where the plaintiff alleged that the "defendant was biased against her based on her race, that she was harassed and treated poorly on the job, and that she was denied the same benefits, opportunities and conditions of employment as her Hispanic co-workers until she was ultimately wrongfully terminated").

*Ashmeade*, 2024 WL 4266391, at *18 (alterations in original). To the extent that Plaintiff attempts to buttress his earlier allegations by asserting that Atwell subjected him to disparaging radio broadcasts, this allegation, too, is insufficient to state an IIED claim. Without allegations about the nature and the contents of the radio broadcasts, there is no basis to conclude that the broadcasts constituted extreme and outrageous conduct under New York law. *See Klein v. Metro. Child Servs., Inc.*, 954 N.Y.S.2d 559, 562 (App. Div. 2012) (dismissing an IIED claim where "the cause of action . . . states little more than the conclusion that [the] plaintiff suffered extreme and grievous mental distress as a result of the extreme and outrageous behavior of the defendants" (alterations adopted) (quotation marks omitted)); *Fusco v. Fusco*, 859 N.Y.S.2d 894, 894 (Sup. Ct. 2008) ("The plaintiff has not alleged any facts which demonstrate extreme and outrageous conduct on the part of the defendant. Accordingly, the final [claim] in the amended complaint is dismissed . . . .") (citation omitted)).[18]

---

[18] Moreover, the Court notes that, even in the context of widespread broadcasting of sensitive and offensive content, the standard for a broadcast to be "outrageous" such that it supports an IIED claim is extremely high. *See, e.g.*, *Chanko*, 27 N.Y.3d at 50–51, 57–58 (concluding that the plaintiff had not alleged sufficiently outrageous conduct where she brought an IIED claim based upon the fact that her husband, who was at a hospital to receive emergency medical treatment, was filmed in his final moments of life without his or the plaintiff's consent or knowledge, though his name was withheld and face blurred, where those final moments, as

8. Remaining Claims

That leaves the following claims: "Nonfeasance Termination" (Count VIII); "Malfeasance PIVOT Plan and Wrongful Dismissal Termination" (Count IX); "Biased Intentional Unjust Treatment" (Count X); "Discrimination and Preferential Treatment in the Use of the PIVOT Plan" (Count XI); "Malfeasance, Nonfeasance and Misfeasance" (Count XII); and Constructive Discharge (Count XIV).

As to Count VIII, "nonfeasance" is simply a subset of the doctrine of negligence, rather than a separate claim. *See, e.g.*, *Golub v. Mod. Yachts, LLC*, 228 N.Y.S.3d 12, 14–15 (App. Div. 2025) (describing nonfeasance as a "failure to act" and explaining that an individual could not be held liable under the doctrine of negligence for nonfeasance because he owed no duty (quotation marks and citation omitted)); *Brooks v. Vill. of Fairport*, 188 N.Y.S.3d 290, 291–92 (App. Div. 2023) (explaining that failure to control growth of tree's roots "would at most constitute nonfeasance" rather than "affirmative negligence" (quotation marks and citation omitted)). As explained, any negligence claim raised by Plaintiff is barred by the New York Worker's Compensation Law. Accordingly, Count VIII is dismissed.

As to Count IX, it appears that this Count seeks to challenge the use of the PIVOT Plan and his dismissal from Amazon. (TAC 28.) To the extent that this Count is meant as a charge that Plaintiff was subjected to the PIVOT Plan or dismissed from Amazon for discriminatory reasons, it is dismissed for the same reasons that Count I is dismissed. And to the extent that Plaintiff seeks to raise a separate claim for wrongful discharge, there is no separate tort for wrongful discharge actionable under New York law. *See Lobosco v. N.Y. Tel. Co./NYNEX*, 751

---

well as the moment his doctor told his family that he had died, were broadcast on television, and therefore dismissing IIED claim at pleading stage).

N.E.2d 462,  (N.Y. 2001) ("New York does not recognize the tort of wrongful discharge." (citation omitted)).  Accordingly, this claim is dismissed.

Count X appears to re-raise Plaintiff's claims for disparate treatment under Title VII and the ADEA, (*see* TAC 30–31), and Count XI appears to re-raise Plaintiff's claims that the use of the PIVOT Plan constituted disparate treatment or that the use of such plans had a disparate impact, in violation of Title VII or the ADEA, (*see id.* at 32–33).  To the extent this Count raises a disparate treatment claim or a disparate impact claim under the ADEA, it is dismissed for the same reasons that Plaintiff's ADEA disparate treatment claims and ADEA disparate impact claim are dismissed, as described above.  And to the extent that this claim is meant to state a claim for disparate impact based on Plaintiff's race, that "claim[] [is] already pleaded, and can still be pursued," in Plaintiff's Count II.  *Benacquista v. Spratt*, 217 F. Supp. 3d 588, 605 (N.D.N.Y. 2016).  Plaintiff's Count X is therefore dismissed.  *Id.*; *see also Loc. 3599, NYC Dep't of Env't Prot. Tech. Pro. Emps. v. City of New York*, No. 23-CV-1035, 2024 WL 966077, at *12 (S.D.N.Y. Mar. 6, 2024) ("Plaintiffs have simply repackaged their First Amendment retaliation claim as an equal protection claim.  Thus, the Court dismisses the equal protection claim as wholly duplicative of the First Amendment retaliation claim."); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) ("Plaintiff's . . . claim relies on the same facts as her other causes of action . . . . Because this claim is duplicative, it is dismissed." (citation omitted)).  The same is true of Plaintiff's Count XVI for "retaliatory harassment," (TAC 40–41), which is duplicative of his retaliation claims and can be pursued through his pursuit of his Count IV.

Count XII is dismissed because it either involves negligence allegations barred by the Worker's Compensation Law or because it involves workplace discrimination claims improperly packaged as negligence causes of action.  Although Plaintiff characterizes this Count as one for

54

"malfeasance, nonfeasance and misfeasance," (TAC 33), the gravamen of his allegations is that Defendant either intentionally acted unlawfully (malfeasance), failed to perform an act required by duty (nonfeasance) or improperly performed a lawful act (misfeasance), and that one of these purported failures breached a duty that caused him harm. (TAC 34.) These are simply three different theories upon which a litigant might assert a negligence claim. As supporting facts, Plaintiff cites Amazon's reported failure to respond to safety hazards, which, as described, cannot form the basis of a claim here. (*Id.*) He also references Amazon's asserted misuse of the PIVOT Plan. (*Id.*) However, purported violations of anti-discrimination laws do not give rise to a tort claim under New York law. *See Gomez v. Stonybrook Univ.*, No. 14-CV-7219, 2016 WL 1039539, at *14 (E.D.N.Y. Jan. 28, 2016) (dismissing claim based on failure to protect the plaintiff from harassment, which was "essentially no different from the plaintiff's claims under Title VII and NYSHRL[,]" on grounds that these allegations did not state a claim under state tort law), *report and recommendation adopted*, 2016 WL 1045536 (E.D.N.Y. Mar. 15, 2016); *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 315 (S.D.N.Y. 2014) ("[The plaintiff's] negligence claim is essentially that [the defendants] failed to protect him from . . . harassment and then retaliated against him. But this is no different from his employment discrimination claims under Title VII, NYSHRL, and NYCHRL. And the alleged violations of federal, state, and city anti-discrimination laws are not torts under New York law." (quotation marks and citations omitted)); *Estevez v. Consol. Bus Transit, Inc.*, No. 15-CV-7634, 2016 WL 3448627, at *6 (S.D.N.Y. June 20, 2016) (substantively same).

Count XIV is dismissed as well, because his constructive discharge claim fails as a matter of law. "Constructive discharge of an employee will occur only when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that

55

forces an employee to quit involuntarily." *McCarrick v. Corning, Inc.*, No. 18-CV-6435, 2019 WL 2106506, at *3 (W.D.N.Y. May 14, 2019) (quoting *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 168 (S.D.N.Y. 2006)). Where Plaintiff alleges that he was fired, he "cannot state a constructive termination claim." *Id.*; *see also Lupe v. Shinseki*, No. 10-CV-198, 2012 WL 3685954, at *23 (N.D.N.Y. Aug. 24, 2012) ("As [the] plaintiff claims throughout her opposition to the motion and in her sworn statements that she was terminated, [the] plaintiff cannot sustain a cause of action for constructive discharge."); *Bogart v. N.Y.C. L. Dep't*, No. 00-CV-7417, 2001 WL 1631986, at *10 (S.D.N.Y. Dec. 20, 2001) ("[B]ecause [the] plaintiff was actually, and not constructively, discharged, he cannot maintain a claim for constructive discharge.").

Plaintiff's TAC also describes allegations that he was discriminated against based on his familial status. (*See* TAC 12; *see also* Pl.'s Sur-reply 12.) However, this claim fails because Plaintiff has included no allegations that any "adverse employment action occurred under circumstances giving rise to an inference that the employer acted with discriminatory intent" due to Plaintiff's familial status. *Gallardo v. IEH Corp.*, No. 21-CV-3257, 2022 WL 4646514, at *5 (E.D.N.Y. Oct. 1, 2022) (citation omitted). Indeed, Plaintiff does not include a single non-conclusory allegation of discrimination based on his status as a parent; he simply states that his preferred work schedule was not accommodated. *See Duffy v. WM Res., Inc.*, No. 24-CV-6486, 2025 WL 219107, at *5 (W.D.N.Y. Jan. 16, 2025) (dismissing NYSHRL claim where the plaintiff "provide[d] no allegations to support her claim that her termination had a discriminatory basis, save for . . . conclusory statements" (citation omitted)). Plaintiff does not point to any comments, for instance, "directed at [him]" as a parent. *Gallardo*, 2022 WL 4646514, at *6 (explaining that NYSHRL familial status discrimination claim failed where it was premised on comments critiquing single parent plaintiff's "working remotely or taking time off" in

56

conjunction with a stray remark about her single-parent status); *cf. Kurtanidze v. Mizuho Bank, Ltd.*, No. 23-CV-8716, 2024 WL 1117180, at *16 (S.D.N.Y. Mar. 13, 2024) (denying motion to dismiss where managers made comments about plaintiff "'abandoning the team' to attend to his son's medical emergency, and telling him that 'the primary caregiver is supposed to be the mother of the children,' as a 'man cannot be the primary caregiver'" (alteration adopted) (citations omitted)).  Nor did he include allegations of an appropriate comparator "similarly situated in all material respects" to himself, as might support an inference of discriminatory motive.  *Duffy*, 2025 WL 219107, at *5 (citation and quotation marks omitted).  Accordingly, in so far as Plaintiff's TAC alleges discrimination based on his familial status, this claim is dismissed.

### III.  Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is granted in part and denied in part.  Plaintiff's Counts I, III, VI–XIV, and XVI are dismissed.  Because this is the second adjudication of Plaintiffs' claims against Defendant on the merits, the claims are dismissed with prejudice.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Valde-Cruz v. Russo*, No. 20-CV-9240, 2024 WL 809903, at *10 (S.D.N.Y. Feb. 27, 2024) (dismissing the pro se plaintiff's claims with prejudice where the plaintiff's claims had already been adjudicated on the merits once before, and the second amended complaint did not cure the identified deficiencies); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting a motion to dismiss with prejudice where "[the p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration adopted) (internal quotation marks and citation omitted)); *Herbert v. Delta Airlines*, No. 12-CV-1250, 2014 WL 4923100, at *5

(E.D.N.Y. Sept. 30, 2014) (dismissing complaint with prejudice where "[the c]ourt previously granted [the pro se plaintiff] leave to replead, identifying his original complaint's deficiencies" and "[the plaintiff's] amended complaint fail[ed] to correct any of these deficiencies," explaining that "the [c]ourt lack[ed] a basis to believe further amended pleadings would fare any better" (citation omitted)).  The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 49, and to mail a copy of this Opinion to Plaintiff.

The Court will hold a telephone conference on April 22, 2026 at 10:00 AM.  The telephone conference may be accessed by calling 605-472-5160 and using access code #4653066.

SO ORDERED.

Dated:   March 31, 2026
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

58