USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/27/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

Keith Ashmeade,
Plaintiff,

-against-

Amazon.com Services LLC et al.,
Defendant.

---------------------------------------------------------------X

23-cv-04331-KMK-VR

**ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

On July 29, 2026, the parties submitted a joint letter raising several discovery disputes. (ECF Nos. 93, 93-1). Before turning to the merits, the Court addresses two preliminary matters.

First, the parties' submission made their disputes needlessly difficult to decipher. Plaintiff said too much, often repetitively and, as discussed below, with inaccurate citations. Defendant said too little, often answering Plaintiff's arguments with generalities rather than specifics. The Court will not undertake this sort of reconstruction again. Future joint submissions must identify each dispute, the parties' respective positions, and the specific relief requested with enough precision for the Court to resolve the issue without having to piece together the arguments itself.

Second, Plaintiff's submission cites two authorities that do not exist as cited. (ECF No. 93-1 at 4–5). They are: (1) "*In re State Street Bank and Trust Co. ERISA Litig.*, No. 07-cv-10907, 2009 WL 10260136, at *1 (S.D.N.Y. Apr. 8, 2009);" and (2) "*SEC v. Collins*, No. 01-cv-3065, 2002 WL 31109065, at *4

(S.D.N.Y. Sept. 23, 2002).” (*Id.*). Although the cited docket numbers correspond to cases filed in this District, the captions do not match Plaintiff's citations. And searches for the cited Westlaw numbers produced no corresponding decisions.[1]

The likely explanation is Plaintiff's use of generative AI in litigating this case, which he has previously acknowledged to the Court. There is nothing inherently improper about using generative AI to assist with legal research or drafting. The problem is submitting its output to the Court without verifying its accuracy. Rule 11 of the Federal Rules of Civil Procedure says that by presenting a paper to the Court, an attorney or unrepresented party certifies that the paper's legal contentions are “warranted by existing law.” Fed. R. Civ. P. 11(b). That obligation includes verifying that cited authorities exist and support the propositions for which they are being offered. *See Santana v. Shook Hardy & Bacon*, 25-CV-5088 (RA), 2026 WL 2212887, at *4 (S.D.N.Y. July 31, 2026) (explaining that “Rule 11 requires parties to certify that their legal contentions are warranted by existing law” where pro se plaintiff's papers “contained citations and quotations to non-existent case authority” (internal quotation marks and citation omitted)). The rule applies to attorneys and pro se litigants alike. Fed. R. Civ. P. 11(a), (b). Plaintiff is therefore warned that any future submission containing false or nonexistent legal authorities may result in sanctions. *See Montero v. NYCHA*, 24-CV-9301 (JPO) (KHP), 2026 WL

[1] The Court did locate *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403 (S.D.N.Y. 2009), a real decision involving discovery issues that appear to address at least some of the substance for which Plaintiff cited “*SEC v. Collins*.” But that case has a different caption, docket number, date, and citation. The existence of a potentially relevant authority does not excuse citing a nonexistent one.

1696988, at *2 (S.D.N.Y. June 11, 2026) ("Failure to exercise due care in reviewing and filing work product created with the assistance of generative AI tools may violate Rule 11 and other applicable standards of practice and expose the filer to sanctions or other corrective or disciplinary action.").

## DISCUSSION

Returning to the substance of the parties' dispute, the Court resolves the issues raised as follows:

### 1. Defendant's Use of General Boilerplate Objections

Plaintiff argues that Defendant's use of a boilerplate statement that it objected to his request as "overbroad, unduly burdensome, vague, and not proportional" and was producing documents "[s]ubject to and without waiving any objections" violates Rule 34 of the Federal Rules of Civil Procedure. (ECF No. 93-1 at 3–4). According to Plaintiff, when he requested specific employee communications, Defendant was required to say whether it was withholding any responsive documents based on a particular objection. (*Id.*). Defendant does not directly address this argument but maintains generally that Plaintiff failed to "identify any actual deficiency" in his motion papers. (ECF No. 93 at 2).

General or boilerplate objections "should rarely be used." *Fischer v. Forrest*, 14 Civ. 1304 (PAE) (AJP) and 14 Civ. 1307 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017); *accord Owen v. Elastos Found.*, 343 F.R.D. 268, 283 (S.D.N.Y. 2023). Rule 34 instead requires a responding party to "state objections with specificity," which means it must "clearly indicate

whether responsive material is being withheld on the basis of [the] objection." *Fischer*, 2017 WL 773694, at *3; *accord Cardwell v. Davis Polk & Wardwell LLP*, 1:19-cv-10256-GHW, 2021 WL 2650371, at *4 (S.D.N.Y. June 28, 2021). And some courts have concluded that "an objection that does not appropriately explain its grounds is forfeited." *Catahan v. Eco Cmty. Cleaners Inc.*, 20-CV-1749 (AT) (KHP), 2022 WL 22989142, at *1 (S.D.N.Y. Jan. 19, 2022).

Here, Plaintiff is correct that Defendant used boilerplate objections when responding to some of his document requests. (ECF No. 93-1 at 3–4). But "the Court declines to impose the harsh remedy of waiver" on that basis. *Owen*, 343 F.R.D. at 283 (declining to conclude party waived grounds for objections because objections applied consistently across all discovery requests). Instead, Defendant must supplement its responses to state expressly whether it is withholding any responsive, nonprivileged material based on any asserted objection.

**2. <u>The Format of Defendant's ESI Production to Plaintiff</u>**

Plaintiff argues that Defendant violated Rule 34 by refusing to produce documents in their "native format" with their "associated metadata." (ECF No. 93-1 at 4–5). More specifically, Plaintiff wants this level of "forensic evidence" for two documents: (1) a "February 2023 Thrive document;" and (2) a "March 27, 2023 PIVOT Plan." (*Id.*). He argues that this information is necessary because his claims turn on alleged "post-hoc fabrication" that can be tested only through this granular level of detail. (*Id.*).

Defendant responds that Plaintiff's metadata request "is based solely on speculation that documents may have been altered or fabricated." (ECF No. 93 at 1–2). It also argues that Rule 34 only requires it to produce ESI in a reasonably usable form, which it satisfied by producing documents in a "standard TIFF-with-load-files format that included extracted text and permitted electronic searching and review." (*Id.*).

As a general rule in ESI production, a producing party "is not required to accede to the requesting party's specification of form." *Zhulinska v. Niyazov L. Grp., P.C.*, 21-CV-1348 (CBA), 2021 WL 5281115, at *6 (S.D.N.Y. Nov. 12, 2021) (internal quotation marks and citations omitted). And courts in this Circuit have denied requests for metadata, "even where the metadata itself might have some probative value, where that potential value is outweighed by the cost and burden of production." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14 MD 2542 (VSB) (SLC), 2020 WL 1940557, at *2 (S.D.N.Y. Apr. 22, 2020) (internal quotation marks and citations omitted). But courts have also ordered the production of metadata "when it is sought in the initial document request." *Aguilar v. ICE*, 255 F.R.D. 350, 357 (S.D.N.Y. Nov. 21, 2008).

Here, Plaintiff's initial requests plainly asked for the metadata and native files for the PIVOT Plan and Thrive document. (ECF No. 93-1 at 4). He has also explained their relevance to the central allegation in his complaint that Defendant created a pretext for firing him. (*Id.* at 4–5; ECF No. 45 at 8–10, 12,

18–38). Defendant, for its part, does not argue that producing these two documents in native format with metadata would be unduly burdensome. It argues only that it already produced documents in a reasonably usable format. (ECF No. 93 at 1–2). Thus, on this record, Plaintiff's targeted requests for the metadata and native files for the PIVOT Plan and Thrive document are relevant and proportional to the needs of this case. Defendant must therefore produce the metadata and native versions of the March 27, 2023, PIVOT Plan and the February 2023 Thrive document.

The record does not, however, justify requiring Defendant to re-produce its entire production in native format with metadata. If, after further review, Plaintiff identifies particular documents that cannot reasonably be searched or authenticated in their present form, he may raise those specific issues with the Court in accordance with the Court's individual practices.

3. **<u>Defendant's Alleged "Data Dump" of 950 Responsive Pages</u>**

Plaintiff argues that some of Defendant's discovery responses violate Rule 34 because they repeatedly identify a broad range of about 950 pages of produced documents without identifying which documents correspond to which requests. (ECF No. 93-1 at 5). Defendant responds that it is "not required to reorganize its production to conform to Plaintiff's preferred format," noting that the same documents may respond to multiple requests. (ECF No. 93 at 2).

Under Rule 34, a party must either produce documents "as they are kept in the usual course of business or must organize and label them to correspond to

the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Although "Rule 34 does not elaborate on the term 'usual course of business,' . . . [a] party choosing to produce documents as maintained in the ordinary course of business bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate." *Pratt v. Atalian Glob. Servs. Inc.*, 20 Civ. 3710 (PAE), 2021 WL 1234253, at *5 (S.D.N.Y. Apr. 2, 2021) (internal quotation marks and citation omitted). A party generally satisfies that burden by producing ESI as kept in the usual course of business and in a text-searchable format. *See Zhulinska*, 2021 WL 5281115, at *7 (collecting cases); *see also Zakre v. Norddeutsche Landesbank Girozentrale*, No. 03 Civ. 0257(RWS), 2004 WL 764895, at *1 (S.D.N.Y. Apr. 9, 2004) (finding responding party properly "produced the documents in as close a form as possible as they are kept in the usual course of business" in a text-searchable format, so it was "not further obligated to organize and label them to correspond with [the] requests"); *Morgan v. City of New York*, No. 00CIV.9172(LMM)(DFE), 2002 WL 1808233, at *4 (S.D.N.Y. Aug. 6, 2002) (finding party's production sufficient where it produced documents grouped in specific and readily identifiable categories as they were kept in the usual course of business).

Based on the parties' submissions, it is unclear which option Defendant chose. Defendant is not required to produce documents as they are kept in the usual course of business and also organize and label them to correspond to Plaintiff's requests. But it must do one or the other. *See Schrom v. Guardian*

*Life Ins. Co. of Am.*, No. 11 Civ. 1680(BSJ)(JCF), 2012 WL 28138, at *6 (S.D.N.Y. Jan. 5, 2012) (finding party's production of "382 pages in an undifferentiated mass" complied with Rule 34 because it provided declarations explaining that production reflected manner in which documents were kept in regular course of business). Here, Defendant neither organized and labeled the documents to correspond to Plaintiff's requests nor explained that it produced them as they were kept in the usual course of business. Instead, Defendant appears simply to have pointed Plaintiff to nearly 1,000 pages of documents, without organization, labeling, or explanation. That does not satisfy Rule 34. Defendant must therefore supplement its responses by either (1) identifying which documents correspond to each of Plaintiff's requests or (2) representing that it produced the documents as they are kept in the usual course of business and explaining how the documents were maintained in that course and how the production reflects this.

4. **Defendant's Redaction of Documents Without Corresponding Log**

Plaintiff argues that Defendant violated Rule 26 by failing to provide a "privilege log" for heavily-redacted documents produced in discovery. (ECF No. 93-1 at 6). Defendant responds that Rule 26 is inapplicable because those redactions were not based on privilege. Instead, Defendant says it redacted material to "protect personally identifiable information, confidential employee information, and other sensitive nonparty information." (ECF No. 93 at 2).

"Redactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege." *Beverley v. N.Y.C. Health & Hosps. Corp.*, 18-cv-08486 (ER), 2024 WL 1342806, at *10 (S.D.N.Y. Mar. 29, 2024) (citation modified); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, Nos. 08 md 1945(RJH)(DFE) and 08 Civ. 0333(RJH)(DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (directing parties not to redact information because it "breed[s] suspicions" and "may deprive the reader of context"). And when a party redacts something for a reason other than privilege, the redaction "must be accompanied by a statement by the producing party of the general nature of the redacted information and the reason for which" it was redacted. *In re Bystolic Antitrust Litig.*, 20-cv-5735 (LJL), 2021 WL 878568, at *2 (S.D.N.Y. Mar. 9, 2021). That requirement guards against improper redactions and gives the receiving party a meaningful basis to challenge them. *Id.*

Defendant must therefore provide a log identifying the basis for each nonprivileged redaction in its production to Plaintiff. *See Beverley*, 2024 WL 1342806, at *10–11 (directing party to provide log for nonprivileged redactions that included "reasons why documents were redacted"); *In re Bystolic Antitrust Litig.*, 2021 WL 878568, at *2 (similar).

**5. <u>Production of Comparator Discovery</u>**

Plaintiff argues that Defendant has refused to produce comparator discovery, including "localized demographic and outcome datasets" relevant to

his disparate treatment claim and "logs" relevant to his hostile work environment claim. (ECF No. 93-1 at 3, 5). For his hostile work environment claim, Plaintiff seeks discovery concerning three Caucasian employees—Victor Essokvic, Jacob Smith, and William Wilson. For his disparate treatment claim, he seeks information about "L4/L5 Operations/Area Managers" at the "SWF1 facility" who directly reported to "Atwell, McLaughlin, or Rudy" between "January 1, 2022, and August 31, 2023." (*Id.*). Defendant initially objected that Plaintiff's request was "overbroad, unduly burdensome, and not proportional" because it covered periods when Plaintiff was not employed by Defendant. Defendant maintained those objections after Plaintiff revised his request. (*Id.* at 5).

"The very essence of Title VII is comparative evidence," *Weinstock v. Columbia Univ.*, No. 95 Civ. 0569(JFK) (RLE), 1995 WL 567399, at *7 (S.D.N.Y. Sept. 26, 1995), *aff'd*, 1996 WL 658437 (S.D.N.Y. Nov. 13, 1996), and case law "makes clear that comparator discovery should be liberally granted to allow Plaintiff to attempt to make a showing of discrimination." *Dass v. City Univ. of N.Y.*, 18-CV-11325 (VSB)(OTW), 2022 WL 16737028, at *3 (S.D.N.Y. Nov. 7, 2022). Here, comparator evidence is relevant to two aspects of Plaintiff's Title VII claims. First, Plaintiff alleges disparate treatment based on race, asserting that Defendant treated Caucasian employees more favorably than it treated him, an African American employee. (ECF No. 45 at 8–9, 14–17, 32–33). That is "[t]he most common form of Title VII discrimination." *Carroll v. City of Mount*

*Vernon*, 707 F. Supp. 2d 449, 454 (S.D.N.Y. 2010), *aff'd*, 453 F. App'x 99 (2d Cir. 2011). Second, Plaintiff alleges that Defendant created a hostile work environment by imposing a heavier workload on him than his coworkers. (*Id.* at 8–9, 38–40). And "allegations of a heavier workload alone can support a viable hostile work environment claim if the plaintiff was subjected to disproportionately burdensome work assignments." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 466 (S.D.N.Y. 2023) (citation modified) (finding plaintiff "sufficiently alleged a hostile work environment" by alleging she was "assigned a disproportionate workload . . . and was subject to unfair discipline . . . both on account of her race").

Plaintiff has thus shown that comparator discovery is relevant to his claims and that some discovery on that subject is warranted. Defendant's objections are too vague and abstract to justify withholding comparator discovery altogether. The harder question is scope.

On that issue, the present record is insufficient. Plaintiff has narrowed his requests in some respects. For the hostile work environment claim, he identifies only three comparators, which is substantially fewer than the number allowed in some cases. *See Chen-Oster v. Goldman, Sachs & Co.*, 10-cv-6950 (AT) (RWL), 2019 WL 3294145, at *2 (S.D.N.Y. June 7, 2019) (allowing discovery into 32 comparators). His request concerning the disparate treatment claim likewise appears limited by job level, position, facility, supervisors, and time period. (ECF No. 93-1 at 5). But those limits do not identify with sufficient

precision what Defendant must produce. Plaintiff still seeks broad categories of information, such as emails, logs, and metrics, without adequately identifying the particular documents or data within those categories that bear on his claims. Defendant, meanwhile, does not explain with any specificity why responding to those requests would be overbroad, unduly burdensome, or disproportionate. On this record, the Court cannot determine where the proper line should be drawn.

The parties must therefore meet and confer in good faith to define a reasonable scope of comparator discovery. As to Plaintiff's request concerning L4/L5 Operations/Area Managers at the SWF1 facility who reported directly to Atwell, McLaughlin, or Rudy between January 1, 2022, and the date of Plaintiff's termination, the parties should address the following: (1) the particular documents or data Plaintiff seeks, (2) appropriate temporal limits, (3) the format of production, (4) the burden of production, and (5) reasonable measures to protect privacy and exclude unrelated personnel information. *See Chen-Oster*, 2019 WL 3294145, at *2 (granting plaintiff's request for comparator discovery but narrowing the amount of discovery defendants required to provide).

The same approach applies to Plaintiff's request concerning Victor Essokvic, Jacob Smith, and William Wilson. Discovery about those employees appears to be relevant to Plaintiff's hostile work environment claim, but the present request remains too imprecise for the Court to set the proper scope of

production. Plaintiff seeks "Austin Action, Chime Text, Email, Slack, logs and metrics," without sufficiently identifying which documents within those broad categories relate to his claim. (ECF No. 93-1 at 3). The parties must therefore meet and confer in good faith to identify the particular materials Plaintiff seeks and to agree on reasonable limits to the production. The Court does not, at this stage, direct Defendant to produce every document falling within the categories Plaintiff has listed.

## **CONCLUSION**

Within 14 days of the date of entry of this Order, Defendant is directed to comply with each of the directions provided above and the parties are directed to meet and confer regarding the comparator discovery. The Clerk of Court is kindly directed to close the gavel associated with ECF Nos. 79 and 80.

**SO ORDERED.**

DATED: White Plains, New York
08/27/26

VICTORIA REZNIK
United States Magistrate Judge